In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 12-2619

JERRY G. MARKADONATOS, individually and on behalf of all
others similarly situated,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF WOODRIDGE,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 7006 — **James F. Holderman**, *Judge.*

———————————

ARGUED MAY 30, 2013, REARGUED EN BANC JUNE 3, 2014 —
DECIDED JULY 21, 2014

———————————

Before WOOD, *Chief Judge*, and POSNER, FLAUM,
EASTERBROOK, KANNE, ROVNER, WILLIAMS, SYKES, TINDER, and
HAMILTON, *Circuit Judges*.

PER CURIAM. The court is divided. Five judges in two
groups (Judges Posner, Flaum, and Kanne in one; Judges
Easterbrook and Tinder in the other) vote to affirm the
judgment of the district court. Judge Sykes votes to remand

with instructions to dismiss the case for want of standing to sue. The remaining four judges (Chief Judge Wood and Judges Rovner, Williams, and Hamilton) vote to reverse. Because no position commands a majority, the judgment of the district court is affirmed by our divided court. *Durant v. Essex Co.*, 74 U.S. (7 Wall.) 107, 112 (1868).

POSNER, *Circuit Judge*, joined by *Circuit Judges* FLAUM and KANNE concurring in the judgment. The plaintiff was arrested in the Village of Woodridge, Illinois, for shoplifting, an Illinois Class A misdemeanor. 720 ILCS 5/16-25. Upon arriving at the police station he was told that an administrative fee of $30.00 is required upon completion of any custodial arrest/booking procedure. He paid the $30 on the spot, posted bond, and was forthwith released, without being jailed. He later pleaded guilty to the shoplifting charge and was ordered to undergo 12 months of court supervision and to pay fees and fines totaling $785 (on top of the $30 fee that he had paid at the police station). He claims to have completed his period of supervision successfully, and that as a result the shoplifting charge was dismissed, "without adjudication of guilt," pursuant to 730 ILCS 5/5-6-3.1(f). The defendant (the Village of Woodridge) denies that the plaintiff obtained such a dismissal, but since the complaint was dismissed on the pleadings, with no findings based on evidence, we'll assume that the plaintiff's allegation is correct. Nothing turns on whether it is or is not correct, however, as we'll see.

The suit (a class action suit, but dismissed by the district judge before he decided whether to certify a class) challenges the constitutionality of subsection 5-1-12(A) of section 5-1-12 (captioned "Administrative Fees") of the Woodridge Village Code. The subsection imposes a "booking fee" of $30

"when posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant." Presumably, "when posting" means "on a person who posts." The subsection is poorly drafted; its poor drafting will figure in our analysis. Although the ordinance has been repealed and the repeal moots the plaintiff's request for declaratory and injunctive relief, it occurred after he paid his $30 and so does not nullify his claim for damages.

The plaintiff appealed and a panel of this court affirmed the dismissal of the suit by a split vote. 739 F.3d 984 (7th Cir. 2014). Judge Stadtmueller of the Eastern District of Wisconsin, sitting by designation, wrote the majority opinion. Judge Sykes wrote a concurring opinion and Judge Hamilton a dissenting opinion. The plaintiff petitioned for rehearing en banc, and his petition was granted.

Judge Hamilton's dissent assumed that the ordinance requires imposition of the $30 charge on anyone who's arrested, whether or not he's released from custody immediately either because he posts bail (that is, pays money out of his own pocket to be released) or posts a bond (borrows the required bail money). There are false arrests, how frequently or infrequently in Woodridge we have no idea, and to be forced to pay even a small amount of money for being falsely arrested may present serious constitutional issues. But the court doesn't have to decide any of those issues—indeed, it should not reach them.

There is a critical difference between a fee for posting bail and a fee (if that's the right word for it) for being arrested. To be released on bail, whether having been arrested falsely or not, is a benefit that the Village of Woodridge confers on the people whom its police officers arrest. Most people who

are arrested do not want to spend any time in jail, and this is true whether or not there are solid grounds for the arrest, as there were in the case of our plaintiff. He preferred to pay the cost of a bail bond ($150, which was 10 percent of the amount of bail required for him to be released, because his arrest had been for a Class A misdemeanor; see 720 ILCS 5/16-25(a)(1), (f)(1); Ill. Sup. Ct. R. 528(c)).

The cost of the bond was borne by the court and so ultimately by the county or the state. (Illinois does not permit use of commercial bondsmen.) But the Village doubtless bore some expense as well, in making sure that the bond was proper and therefore that the plaintiff could and should be released pending trial. County sheriffs are authorized to charge a fee for bond services, see 55 ILCS 5/4-5001, and in fact Du Page County (in which Woodridge is located) after a cost study set its bond fee at $30. Du Page County Code § 20-130.

The County's cost study found that the cost, per person arrested, to the Sheriff's Department of providing bond was $44.59. *DuPage County Sheriff Cost of Service Analysis* 1-2 (Aug. 9, 2002). On the basis of the study the County raised its fee for the service, which had been $25, to $30. It's thus no surprise that Woodridge, when an arrest is made by its officers rather than by the County Sheriff's police, charges the same fee. There is no contention that for the same service provided by the Village a fee of $30 is excessive; the County study suggests if anything that the fee doesn't cover the Village's costs. Anyway the constitutionality of a fee for a government service does not depend on proof of an exact equality between the cost of the service and the size of the fee. *Massachusetts v. United States*, 435 U.S. 444, 464–67 (1978);

*Mueller v. Raemisch*, 740 F.3d 1128, 1134 (7th Cir. 2014); *Onei-da Tribe of Indians of Wisconsin v. Village of Hobart*, 732 F.3d 837, 841–42 (7th Cir. 2013); *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 728–29 (7th Cir. 2011) (en banc); *Broussard v. Parish of Orleans*, 318 F.3d 644, 660 (5th Cir. 2003) ("even though the connection between the bail fees charged and the administration of the bail-bond system may be somewhat tenuous, … arrestees have failed to present evidence sufficient to show that the fees imposed are arbitrary"); compare *State v. Gorman*, 41 N.W. 948, 949 (Minn. 1889).

If, then, Woodridge's ordinance imposes the $30 charge only when the person arrested "post[s] bail or bond," the charge is a lawful fee for a government service and the plaintiff's case collapses. *Schilb v. Kuebel*, 404 U.S. 357, 370–71 (1971), states that "§ 110-7 [of Article 110 of the Illinois Code of Criminal Procedure of 1963] authorizes retention of the 1% as 'bail bond costs.' This is what that description implies, namely, an administrative cost imposed upon all those, guilty and innocent alike, who seek the benefit of § 110-7. This conclusion is supported by the presence of the long-established Illinois rule against the imposition of costs of prosecution upon an acquitted or discharged criminal defendant, and by the Illinois court's own determination that the charge under § 110-7(f) is an administrative fee and not a cost of prosecution imposed under [Illinois law] only upon the convicted defendant" (citations omitted). And in *Payton v. County of Carroll*, 473 F.3d 845, 852 (7th Cir. 2007), we read that "the sheriffs have a legitimate interest in recouping some of the costs of administering the bail system. If they had to offer another separate set of hearings devoted only to these small administrative fees, they might opt out of the

bail bond process altogether—a step that Illinois would permit them to take. Every detainee would then need to wait for the office hours of the county clerk, rather than the subset of detainees who now elect that option. We conclude that plaintiffs have not stated a claim for a deprivation of due process."

The Supreme Court held many years ago, in *Kent v. Dulles*, 357 U.S. 116 (1958), that the right to travel abroad is a "liberty" protected by the Constitution's due process clauses. Nevertheless you must pay for a passport to be allowed to travel abroad. Similarly, you have a right not to be arrested if there is no probable cause to arrest you; but if you have the misfortune to be wrongfully arrested (though the arrest of the plaintiff in this case was not wrongful), you still must post bail if you want to avoid being jailed pending a judicial determination whether there was probable cause to arrest you. The right to bail, like the right to travel abroad, is a valuable right for which the person seeking it, whether guilty or innocent, must pay. That is what *Schilb* and *Payton* hold. The $30 fee is a part of that cost—a small part.

The plaintiff's counsel tells us that the $30 "booking fee" provision is unique among the provisions of the ordinance because it alone imposes a fee for what may be innocent conduct mistakenly believed by police to be illegal. He instances the $15 fee for "release of [an] impounded dog or cat." But of course a dog or cat may escape the owner's control, and later be impounded, without fault on the owner's part. The animal may have been stolen, or have escaped from its home because a careless workman had left a door or window ajar, or been lured from its litter box by a rogue Woodridge police officer with catnip. Even in such cases,

impounding the animal confers a benefit on the owner for which he must pay despite his lack of fault. Or consider the Village's $250 "towing fee": the owner must pay to recover his car even if he believes with good reason that the car was towed in error from a legal parking spot. It is the same in the false-arrest case if the arrested person wants to be bailed out.

This discussion leads to the critical issue presented by the appeal: the *scope* of the "booking fee" provision. It is unclear. The parties interpret it to mean that if either you are arrested, or you post bail or bond in respect of some other form of "legal process," you must pay the $30. But there is another plausible interpretation. Remember what it says: "when posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant," you must pay the charge. This can be read to mean that you must pay *only* when posting bail or bond in connection with any legal process, including a custodial arrest pursuant to a warrant. The "custodial arrest" clause is, on this interpretation, redundant (for custodial arrest is a form of legal process), but redundancy is common in statutes, and probably more so in village ordinances; a village may not have the resources for assuring highly professional legal draftsmanship.

If we accept the plaintiff's interpretation we create a serious constitutional issue—whether government may charge a person a "fee" (the plaintiff admits that the $30 charge is a fee rather than a fine) merely for being arrested, even if, as things turn out, he has been falsely arrested. As is apparent from Judge Hamilton's panel dissent, adopting the plaintiff's interpretation of the ordinance would plunge the court into a swamp of issues involving both procedural and substantive due process, and maybe equal protection as well. We are

adjured by countless Supreme Court decisions to avoid statutory interpretations that raise serious constitutional issues, and not just interpretations that if adopted would render a statute unconstitutional without further analysis. In the words of Justice Holmes, "the rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act. *Even to avoid a serious doubt the rule is the same.*" *Blodgett v. Holden*, 275 U.S. 142, 148 (1927) (concurring opinion) (emphasis added); see also *Crowell v. Benson*, 285 U.S. 22, 62 (1932); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347–48 (1936) (Brandeis, J., concurring); *Rust v. Sullivan*, 500 U.S. 173, 190–91 (1991); Matthew C. Stephenson, "The Price of Public Action: Constitutional Doctrine and the Judicial Manipulation of Legislative Enactment Costs," 118 *Yale L.J.* 2, 36–39 (2008). This corollary of the "constitutional avoidance" doctrine—a doctrine that in its original form required "that every reasonable construction must be resorted to, in order to *save* a statute from unconstitutionality," *Hooper v. California*, 155 U.S. 648, 657 (1895) (emphasis added); see also *Parsons v. Bedford*, 28 (3 Pet.) U.S. 433, 448–49 (1830) (Story, J.)—has been criticized. See Henry J. Friendly, *Benchmarks* 211–12 (1967); Frederick Schauer, "*Ashwander* Revisited," 1995 *Sup. Ct. Rev.* 71, 74. But it endures, and binds us.

There are limits to interpretive freedom, and thus to the reach of the constitutional avoidance doctrine. The interpretation that avoids having to grapple with difficult constitutional issues must be reasonable to be a serious candidate for adoption. But those limits are not exceeded by an interpretation that confines the $30 booking fee to cases in which a person arrested in Woodridge seeks bail or bond. It's like

interpreting the phrase "my cat enjoys jumping on trampolines and beds" to mean that she enjoys jumping on both things, as opposed to her enjoying jumping only on trampolines and, separately, enjoys beds for reasons unrelated to jumping on them. The latter interpretation, which corresponds to the interpretation urged by the plaintiff in this case, is actually less plausible than the former interpretation, the one that spares us from having to resolve serious constitutional issues. The plaintiff's lawyer emphasizes that the ordinance makes no provision for refunds, but there is no reason for a refund when a valuable service, such as assisting in obtaining bail, is rendered.

Granted, the title of the provision—"booking fee"—points to an arrest; the arrested person is booked even if he does not post bail or bond. But a glance at the other provisions of the ordinance reveals carelessness in titling. For example, the provision imposing a "towing fee" is not imposed every time a vehicle is towed by the Village, even if the vehicle was towed because its driver or owner was arrested; it is imposed only "on an arrestee any time a vehicle release form is required." The opening sentence of the ordinance states that it imposes "fees for the following activities and purposes," and the activity for which the booking fee is imposed is "posting bail or bond on any legal process," including the legal process that consists of a custodial arrest pursuant to a warrant.

Another support for this analysis is the earlier reference to the $30 service fee charged by Du Page County for arranging bail for an arrested person. There is no suggestion that the County's fee is for the "service" of arresting. The fact that the Village of Woodridge charges the identical fee is evi-

dence that like the County's fee it's a fee for arranging for a bail bond—which is not to say the Woodridge police may not be treating it as a fee for arrest, but that is a separate issue, taken up later.

The suggested interpretation does less violence to the provision's "plain meaning" than the Supreme Court's interpretation of a statute which provided that "the Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States." 50 U.S.C. § 403(c) (1982) (now codified at 50 U.S.C. § 3036(e)(1)). Although the Administrative Procedure Act bars judicial review of "agency action [that] is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), the Supreme Court held that termination of employment by the Director of Central Intelligence could be challenged if the challenge was based on the Constitution. This interpretation was inconsistent with the text of the employment statute read in conjunction with the APA, but the Court adopted it "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (emphasis added). For a similar case and result, see *Johnson v. Robison*, 415 U.S. 361, 365–67 (1974).

Granted, the Village does not invoke the doctrine of constitutional avoidance. It comes close, however, when it says in its brief on rehearing that "the 'Arrest Booking Guidelines' promulgated by the DuPage County Court provides that for misdemeanor arrests the arrestee can and should 'be released on bond at the police station.'" In other words, the

Village ties the fee to the bond. The arrested person pays $30 and gets bond. All the Village had to say in addition, to invoke the doctrine clearly, would have been that the fee is for the bond. In any event the purpose of the constitutional avoidance doctrine is not to benefit a party, but to minimize the occasions on which a court declares a legislative enactment unconstitutional. That declaration would be gratuitous in this case because the plaintiff suffered no harm from the alleged constitutional violation. He paid what in his county is the standard bond fee charged by local government and got the bond and spent no time in jail. What's *he* complaining about?

Of course in a sense it's too late to save the ordinance by invoking the doctrine of constitutional avoidance; it's been repealed. But for all we know, there are similar ordinances elsewhere. Remember that Du Page County charges a $30 bond fee, and (in the same section of its ordinance) it makes the fee nonrefundable—so if the plaintiff had been charged *that* fee and had later been acquitted, he would have had no right to get it back. Isn't it important to make clear that a bond fee is *not* an arrest fee?

There is a further reason not to limit the constitutional avoidance doctrine to enactments still in force. The only reason the plaintiff isn't asking for an injunction is that the Village repealed the ordinance, thus rendering that relief (which the plaintiff had originally requested) moot. To preclude application of the constitutional avoidance doctrine whenever it was sought to be applied to a repealed statute or ordinance would disincentivize states and municipalities from repealing their enactments lest repeal lead to an inference that the previous legislation had been unconstitutional.

We avoid creating such incentives in other settings. Fed. R. Evid. 407 (prior remedial measures), for example, forbids admitting evidence of a company's redesigning a product to prove that the previous design was defective. It would be perverse to rule that had Woodridge not repealed the ordinance, the constitutional avoidance principle might save it, but because it has been repealed the Village should be liable for past damages.

As noted earlier, the doctrine of constitutional avoidance functions to minimize friction between courts and legislatures (including state and municipal legislatures). The plaintiff asks us to hold that a local government of Illinois is committing grave violations of his constitutional rights—rights that might conceivably (if implausibly) be traced all the way back to Magna Carta. That imputation should not lightly be leveled against a state government entity, even as modest a one as the Village of Woodridge, Illinois. A saving construction is available to our court; we should embrace it.

No court other than this court in this case has interpreted Woodridge's "booking fee" provision. The meaning of the provision is of course an issue of Illinois law. But whether we could certify the question of its meaning to the Supreme Court of Illinois—a course, by the way, that neither party urges—and if we could whether we should, are very doubtful. Begin with "could." The Illinois court accepts only "Certification of Questions of State Law from Certain Federal Courts," Ill. Sup. Ct. R. 20—and "state law" may not include local ordinances. Our authority to certify questions to the Supreme Court of Illinois is similarly limited to "questions of state law." 7th Cir. R. 52. True, the meaning of local ordinances was at issue in *City of Chicago v. StubHub!, Inc.*, 624

F.3d 363 (7th Cir. 2010), where we certified a question to that court. The court accepted the certification, but the question certified, and answered by the court, was "whether municipalities may require electronic intermediaries to collect and remit amusement taxes on resold tickets"—that is, whether this practice was permitted by Illinois state law.

Whether we could certify to the Supreme Court of Illinois a question about the meaning of a local ordinance, or not, we shouldn't do so in this case. The case doesn't meet our standards for certification, as laid out in *State Farm Mutual Automobile Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001), where we said that "'certification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue.' We also consider whether the issue is of interest to the state supreme court in its development of state law, and the interest of future litigants in the clarification of state law" (internal citations omitted). The fact that Woodridge's ordinance has been repealed (along with a similar ordinance of another Illinois municipality, Naperville, see *Roehl v. City of Naperville*, 857 F. Supp. 2d 707, 709–10 (N.D. Ill. 2012)) is decisive against certification.

In these circumstances, given the decisions of the Supreme Court of the United States that we've cited, our proper course is clear: it is to interpret the "booking fee" provision of the ordinance as being limited to bail and bond cases.

This is not to condone—indeed it is to raise serious questions concerning—the conduct of the Woodridge police. If

they were charging the $30 fee to persons whom they arrested who did not attempt to post bail or bond (maybe persons who couldn't or wouldn't spare the money, or were confident of being quickly released from jail because their arrest had been a palpable mistake), those persons might well have state or federal remedies, or both. Being arrested is not a "service" to the person arrested! But the plaintiff in this case did not want to risk time in jail. He posted bond and was released. He paid for and received a valuable service. No constitutional right of his was violated.

It could be argued that even if the ordinance does not allow the imposition of an arrest fee, as distinct from a fee for a get-out-of-jail-card, a person who can prove that the Village of Woodridge has or had a policy of charging the fee to anyone who is arrested is entitled to damages from the Village. But Markadonatos is challenging the ordinance, not a policy that exists apart from it; for he is suing exclusively as a member of the class of persons to whom the ordinance has been applied, and the ordinance is constitutional if it authorizes a fee only for posting bond. Furthermore, even if the Village, or the police, have and enforce an unlawful policy of imposing the fee on every arrested person, bond or no bond, Markadonatos was not a victim of such a policy. He committed theft yet avoided for $30 (plus the $150 cost of the bond, as distinct from the Village's help in getting him the bond) having to spend any time in jail. He got a reasonable deal. If the Village or the police have acted unlawfully toward other persons, they are the persons who have standing to sue.

Giving the ordinance an interpretation that renders it constitutional leaves no basis for the suit; and, incidentally, by removing the constitutional obstacle leaves the state judi-

ciary free to interpret the ordinance in any future lawsuit. We have no authority to give a state statute or local ordinance a definitive interpretation; that is the prerogative of the state judiciary. But when a case properly before us presents an issue of interpretation of state law, whether it is case law or legislative law, our duty is to foresee as best we can the interpretation that the state courts would adopt. The Illinois courts would doubtless prefer to interpret the pertinent provision of the ordinance to preserve its constitutionality rather than to adopt an interpretation that might render it unconstitutional. But we preserve the state judiciary's opportunity to give or not give the ordinance a saving construction, as it wishes.

The case was properly dismissed on the pleadings, because the ground for the dismissal was the answer to a question of law, namely the meaning of the relevant provision of the ordinance. A suit premised on the distinct theory that the Woodridge police commit a constitutional violation when they collect a fee (unlawfully, because not authorized by the ordinance as we interpret it) for an arrest that does not result in the posting of bail or bond might succeed, but, as we have emphasized, it is not this case. Whatever the situation of other arrested persons, Markadonatos *himself* received a reasonable fee for a valuable service. What is his gripe? What damages has he suffered? What possible relief could a court grant him?

A note in closing about the alternative ground for dismissal urged in Judge Sykes's concurring panel opinion: lack of standing because of absence of an injury remediable by the court. Article III of the Constitution of course makes standing a prerequisite to maintaining a suit in a federal

court. Judge Sykes pointed out that if the objection to the ordinance was, as it seemed to be, that it imposed a fee for being arrested with or without probable cause, the plaintiff could not make the objection a basis for a suit in federal court, because *he* was arrested with probable cause. There was an echo of Judge Sykes's concern in Judge Hamilton's panel dissent when he said that the constitutional flaw that he discerned in the ordinance was "easy to correct: make the fee payable upon conviction of a crime, as part of the court costs authorized by law after the full procedural protections of the criminal justice system." 739 F.3d at 993.

The plaintiff received those full procedural protections but only after paying the fee. Yet what difference would it have made to him had he paid it after rather than before receiving them? He was arrested on January 8, 2011, and discharged from supervision on April 19, 2012. By then and probably earlier he would have, under Judge Hamilton's conception of lawful procedure, been lawfully required to pay the $30 fee. Suppose he had instead paid it on January 8, 2012. Then, at a generous discount rate of 10 percent per annum, he incurred a present-value loss of $2.73 ($30.00 − $27.27) by having to pay in advance. *De minimis non curat lex*.

Judge Sykes's approach, at least if the $2.73 loss of present value is disregarded, would resolve the case on grounds of standing, requiring dismissal without prejudice. The slightly different approach taken in this opinion implies dismissal on the merits (as in the district court): the ordinance is constitutional, and, because the plaintiff posted bond and thus came within the ordinance so interpreted, was not violated and no constitutional right of the plaintiff was infringed.

EASTERBROOK, *Circuit Judge*, joined by *Circuit Judge* TINDER, concurring in the judgment. I agree with Judge Sykes that Markadonatos lacks standing to contest the application of the ordinance to persons arrested without probable cause and to contend that the Village needed to provide hearings. "[A] person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *New York v. Ferber*, 458 U.S. 747, 767 (1982). See also *Sabri v. United States*, 541 U.S. 600, 608–10 (2004). But I do not join her opinion, which proposes to dismiss the entire suit for want of a justiciable controversy, because Markadonatos has standing to contest the ordinance's application to a person arrested *with* probable cause, as he was. He maintains (and Judge Hamilton concludes) that the fee is constitutionally obnoxious even when the arrest is supported by probable cause and followed by a conviction. That contention is justiciable.

Judge Posner proposes to duck that question by holding that the fee is attributable, not to the arrest, but to a person's release on bail. I agree with his approach to the extent of saying that, if a state court could save a statute by reasonably giving it a particular construction, a federal court ought not take the matter out of the state's hands by peremptorily declaring the statute unconstitutional "on its face"—which is to say, in every possible application. But we cannot do the construing, after the fashion of *Bond v. United States*, 134 S. Ct. 2077 (2014), which recently indulged a strained reading of a federal statute in order to avoid a constitutional problem. Only a state court can give an authoritative limiting construction to a state statute.

If I had to make an independent assessment of the ordinance's meaning, I would agree with Judge Posner. But our task is to resolve the parties' dispute. Neither side has asked us to read the ordinance as applicable only to bail or to ensure that the state judiciary has room to give the ordinance a limiting construction. Instead they agree that the ordinance imposes a $30 fee on all arrests. The only justiciable subject is whether the Constitution allows the ordinance's application to someone arrested on probable cause. And to that question the answer is yes.

Probable cause justifies substantial burdens. Someone arrested on probable cause can be taken to the stationhouse, booked, and held pending bail, even if the offense is punishable only by a fine. See *Atwater v. Lago Vista*, 532 U.S. 318 (2001). A person taken into custody can be held as long as 48 hours before seeing a magistrate. See *Riverside v. McLaughlin*, 500 U.S. 44 (1991). Probable cause, reflected in a grand jury's indictment, justifies holding a defendant in custody pending trial. See *Costello v. United States*, 350 U.S. 359 (1956); *Gerstein v. Pugh*, 420 U.S. 103 (1975). Probable cause also can justify the seizure of the suspect's assets pending forfeiture, a step that may make it impossible for the suspect to hire his preferred lawyer and might lead to a conviction, when a better defense could have produced an acquittal. See *Kaley v. United States*, 134 S. Ct. 1090 (2014).

All of these losses vastly exceed a $30 fee. If probable cause justifies months in jail and an inferior lawyer, what sense could it make to say that a $30 fee is constitutionally excessive? True, someone arrested on probable cause does not get the $30 back if he prevails at trial—but neither does he get back the value of time spent in jail or the value of the

difference between a top-notch lawyer and the average quality provided under the Criminal Justice Act. It won't suffice to say, as Judge Hamilton's dissent does, that probable cause isn't enough to justify permanent deprivations of property. It *does* justify deprivations of liberty; why is property more sacrosanct?

The Due Process Clause applies to both liberty and property. When there is a distinction, property receives the lesser protection. The burden at a criminal trial, where liberty is at issue, is "beyond a reasonable doubt"; the burden at a civil trial involving property, by contrast, is "preponderance of the evidence." In a criminal trial that can end in a sentence of imprisonment, the defendant is entitled to counsel at public expense if he cannot afford a lawyer; in a civil trial, by contrast, a defendant who cannot afford a lawyer must represent himself. The list could be extended, but the point has been made. Liberty receives the greater protection. So the cases establishing that probable cause suffices to deprive a person of liberty for months pending trial show that there can't be a problem with a $30 fee.

More than that. I do not think that the Due Process Clause has anything helpful to say about the claim Markadonatos presents. The Constitution requires due *process*, yet for reasons the panel explains (and Judge Sykes reiterates) Markadonatos's demand for a hearing is unavailing. He might have been entitled to a hearing (or some other informal process, see *Goss v. Lopez*, 419 U.S. 565 (1975)) adequate to separate persons arrested with probable cause from persons arrested without, but he has never asked for that sort of procedure. He maintains, instead, that the ordinance imposes a fee on every arrest, making probable cause irrelevant.

Yet he concedes that he was arrested. On his own view of the ordinance, there is nothing to hold a hearing about. Instead his principal argument comes under the banner of "substantive due process."

The Supreme Court has concluded that substantive due process is applicable only when the government deprives a person of a "fundamental" right. See *Washington v. Glucksberg*, 521 U.S. 702, 719–23 (1997). *Glucksberg* held that assisted suicide is not a fundamental right. Markadonatos does not contend that the loss of $30 is more important than the power to choose the time and manner of one's death—or any of the other asserted rights that the Supreme Court has held not to be "fundamental." He argues instead that there is a "fundamental right" not to be deprived of *anything* "arbitrarily," and he maintains that the $30 fee is "arbitrary."

That is not an application of the *Glucksberg* framework; it elides the need to find a "fundamental right." If Markadonatos were correct, a court would *never* ask whether the asserted interest is "fundamental." Instead it would go straight to the question whether the state has acted "arbitrarily," which is to say, would decide every claim on the merits. *Glucksberg* requires, however, an initial step: ascertaining whether the interest at stake is "fundamental." No decision of the Supreme Court so much as hints that a small fee is a "fundamental interest."

Maintaining the difference between "fundamental" and other interests is vital, lest we collapse the distinction between substantive due process and equal protection. The equal-protection question is whether it is possible to imagine a rational basis for the rule. See, e.g., *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976) (describing the rational-basis

standard and applying it to a statute that imposed costs far exceeding $30). Markadonatos does not contend that the ordinance lacks a rational basis. Arrests may be followed by release without charge, release on bail, or incarceration. Any of these costs the Village at least $30—or so a rational legislature could conclude. Both release without charge and release on bail entail lots of paperwork and the time of police officers, if not judges and lawyers; incarceration is costly because prisoners must be fed, supervised, and provided with medical care. Requiring people to reimburse others for the costs they impose on them is proper. (Recall that Markadonatos was arrested on probable cause, which means that his own misconduct caused whatever costs the Village incurred.)

Markadonatos has invoked substantive due process in the hope that we will demand *more* than a rational basis from the Village. We should not oblige. *Glucksberg* separates the domains of equal protection and substantive due process; this controversy is on the equal protection side.

If there is something wrong with a fee of $30 for being arrested, what are we to make of the $400 fee for filing a suit in federal district court? If the arrest was without probable cause, the victim is entitled to damages. A prevailing party will recover costs, including the filing fee, from the defendant, but if the court holds that the arrest was supported by probable cause, then the suspect is out not only the $30 for being arrested but also the $400 for trying to show that he should not have been arrested. It would be absurd to say that the $30 fee violates the Constitution but that the $400 fee does not. And an assertion that a suspect incurs the $400 fee voluntarily by filing suit is hollow: the controversy begins not with the suit but with the arrest, which is involuntary

from the perspective of Markadonatos or any other suspect. The only way to contest the arrest (or for that matter the arrest fee) is to pay a $400 filing fee in federal court. Probable cause for the arrest means that a plaintiff such as Markadonatos does not get the $400 back. If probable cause for arrest supports a $400 fee, why not a $30 fee?

Or consider the fee a village imposes to recover a towed car. These fees often are in the range of $100. No one wants his car towed any more than he wants to be arrested. And cars may be towed without good cause, just as people may be arrested without good cause. It seems more likely that a village would impose a steep towing fee as a means of generating revenue (which would increase the incentive to tow even properly parked cars) than that it would impose a modest arrest fee. Yet at oral argument counsel for Markadonatos acknowledged that a towing fee is valid. What he could not explain is why the Constitution allows a $100 fee after a car is taken to the pound but no fee at all after a person is taken to the stationhouse.

I conclude that Markadonatos has standing to challenge the collection of a fee from a person arrested on probable cause, because that's the category he is in and if he wins he gets the $30 back. But his argument fails on the merits. I therefore concur in the judgment.

SYKES, *Circuit Judge*, dissenting. The ground has shifted under this case since we granted rehearing en banc.

- Three members of the court now propose to affirm by invoking the doctrine of constitutional avoidance, an option not raised by the parties. *See ante*, at 7–15 (Posner, J., concurring in the judgment).

- Four members of the court would reverse and remand on the merits, though on a different analysis than originally argued by the plaintiff or adopted by the panel dissent. *Compare post*, at 45–49 (Hamilton, J., dissenting), *with Markadonatos v. Village of Woodridge*, 739 F.3d 984, 994–1000 (7th Cir. 2014) (Hamilton, J., dissenting), *and* Appellant's Br. at 9–28, 33–40, ECF No. 22 (panel brief).

- For my part, en banc review has reinforced my earlier doubts about the plaintiff's standing. I would vacate and remand with instructions to dismiss for lack of jurisdiction.

- Judges Easterbrook and Tinder substantially agree with me that the plaintiff lacks standing, although they conclude that a narrow aspect of the case is justiciable. *See ante*, at 17 (Easterbrook, J., concurring in the judgment). But they also disagree with Judge Posner's use of the constitutional-avoidance doctrine and instead would hold that the justiciable remainder is not viable as a due-process claim, as the plaintiff has argued it, but only as an equal-protection claim, which fails on the merits. *See id*. at 18–22.

In short, the en banc court cannot agree on what questions the case raises, whether the plaintiff is the right person to raise

them, whether they have been properly preserved, or what
doctrinal framework applies. Our fractured nondecision
suggests that this case was a poor vehicle for resolving the
constitutionality of a jail booking fee.[1]

*     *     *

As the case was originally presented to the panel, the
plaintiff raised a vaguely conceptualized due-process challenge
to Woodridge's booking fee—a $30 fee the Village collects from
everyone who is arrested and booked at its jail. Never mind the
hazy briefing, just describing this fee is enough to trigger alarm
and indignation. Can a municipality really charge a fee simply
for being arrested and booked at its jail? Really?

Maybe not, but the panel majority concluded that the
plaintiff lacks standing on the key "substantive" aspect of his
due-process claim—his argument that it's irrational to impose
the fee on those who are wrongly arrested—because *he* was

---

[1] Our per curiam affirmance is a nonprecedential default disposition
necessitated by our inability to muster a majority for a judgment, akin to an
affirmance by an equally divided court. *See, e.g.*, *Warner-Lambert Co. v. Kent*,
552 U.S. 440 (2008); *see also Neil v. Biggers*, 409 U.S. 188, 191–92 (1972)
(explaining that an equally divided court leaves the lower court's judgment
in force because "it is the appellant or petitioner who asks the Court to
overturn a lower court's decree,"); *see also id.* at 192 (explaining that an
affirmance by an equally divided court has no precedential effect); *Durant
v. Essex Co.*, 74 U.S. (7 Wall.) 107, 112 (1868) ("If the judges are divided, the
reversal cannot be had, for no order can be made. The judgment of the court
below, therefore, stands in full force. It is, indeed, the settled practice in
such case to enter a judgment of affirmance; but this is only the most
convenient mode of expressing the fact that the cause is finally disposed of
in conformity with the action of the court below, and that that court can
proceed to enforce its judgment. The legal effect would be the same if the
appeal, or writ of error, were dismissed.").

*lawfully* arrested on probable cause. *See Markadonatos*, 739 F.3d at 988–89 (majority op.); *id.* at 992–93 (Sykes, J., concurring). That remains my view. And I'm now convinced that the plaintiff lacks standing on the "procedural" aspect of his claim as well.

The booking fee is listed in the Woodridge Village Code as a line item in an otherwise unremarkable schedule of administrative fees. In its entirety, the ordinance reads as follows:

> Booking fee: When posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant. $30.00

WOODRIDGE, ILL., CODE § 5-1-12A (2013), *repealed by* Ordinance of Mar. 13, 2014, Ord. No. 2014-11. The terse language is not unusual given its placement in a schedule of administrative fees promulgated by a small municipality.

Jerry Markadonatos was arrested for shoplifting and taken to the Woodridge jail. During the booking process, he was given written notice of the $30 booking fee, and he paid it immediately, before bonding out of jail. He was thereafter charged in DuPage County Circuit Court with retail theft, a state misdemeanor offense. He pleaded guilty as charged, was found guilty, and was sentenced to a 12-month term of supervision and ordered to pay various court costs and criminal-justice fees.

As Judge Posner notes, the parties dispute the legal significance of the term of supervision, which apparently was imposed under a pretrial diversionary program that permits the court to dismiss the case upon the defendant's successful completion of supervision. *See* 730 ILL. COMP. STATS. 5/5-6-1(c), 5/5-6-3.1(e), 5/5-6-3.1(f). The dispute is immaterial. What

matters here is that Markadonatos was arrested on probable cause, was charged with retail theft, pleaded guilty, and served a term of supervision for that crime. Everyone agrees on these facts.

While he was still on court supervision, Markadonatos sued the Village under 42 U.S.C. § 1983, accusing it of violating his right to procedural and substantive due process by collecting the booking fee without a hearing at which he could contest it. He sought the full range of remedies for the claimed constitutional violation: a declaration that the booking-fee ordinance is unconstitutional, an injunction enjoining Woodridge from enforcing it, and damages. He brought the suit on behalf of himself and a class of "[a]ll individuals who were deprived of their property pursuant to Woodridge Municipal Ordinance 5-1-12(A) without being provided the constitutionally guaranteed due process of law." The district court dismissed the case on the pleadings.

In his initial brief on appeal, Markadonatos conflated the procedural and substantive aspects of his due-process claim. He argued that the fee is procedurally unconstitutional because the Village collects it during the booking process without a predeprivation hearing to test the validity of the arrest or at least a postdeprivation process by which those who are wrongfully arrested, never charged, or are found not guilty may obtain a refund. This way of framing the procedural challenge requires a prior conclusion about the *substance* of the ordinance. By its terms, the ordinance does not make the fee contingent on a valid arrest or successful prosecution. To resolve the argument about inadequate *process*, the court would first have to conclude that the booking fee is *substantively* unconstitutional as applied to people who are wrongfully

arrested, never charged, or are found not guilty. But Markadonatos isn't in any of those groups. He concedes that he was lawfully arrested on probable cause, was in fact charged with retail theft, and pleaded guilty as charged.

So the panel majority concluded that Markadonatos lacked standing to challenge the fee as a violation of substantive due process and proceeded to analyze the procedural due-process claim without the embedded substantive premise, rejecting it under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Markadonatos*, 739 F.3d at 988–91; *id*. at 992–93 (Sykes, J., concurring). Judge Hamilton dissented, construing the booking fee as "in substance a criminal fine," *id.* at 993 (Hamilton, J., dissenting), which of course cannot be imposed without an adjudication of guilt, *id.* at 994–99.

Markadonatos then obtained new counsel and sought rehearing en banc. The court granted rehearing and ordered the parties to submit new briefs on (among other things) the question of standing and the fee/fine distinction raised in Judge Hamilton's dissent. In this new round of briefing, Woodridge pressed harder on the standing problem, and the parties agreed that the booking fee is indeed a fee, not a fine.

Meanwhile, the Village quietly repealed the booking fee. No one bothered to tell the court about this important development, perhaps because the claim for damages remains. But the repeal moots the claim for injunctive relief.

Now, in yet another twist, three members of the court propose to resolve the sole remaining live claim on a new ground never raised by the parties. Invoking the doctrine of constitutional avoidance, my colleagues interpret the ordinance as a fee for bonding out of jail. *See ante*, at 7–15 (Posner, J., concurring in the judgment). Having thus "saved" the (now

repealed) ordinance via a narrowing construction, they conclude that the Village committed no constitutional violation (because Markadonatos bonded out of jail) and therefore reject the claim on the merits. *Id.* at 16.

I certainly agree that the ordinance is not clearly drafted. And the proposed limiting construction may be a reasonable one. But throughout this litigation, the parties have agreed that Woodridge imposes the fee on all persons arrested and booked at its jail, regardless of whether they remain in custody, post bail, or bond out. Granted, there is some authority for invoking the doctrine of constitutional avoidance sua sponte. *See, e.g.,* *Escambia County v. McMillan*, 466 U.S. 48, 51–52 (1984); *Edward J. DeBartolo Corp. v. NLRB*, 463 U.S. 147, 158 (1983); *Youakim v. Miller*, 425 U.S. 231, 234–36 (1976); *see also* Adrian Vermeule, *Saving Constructions*, 15 GEO. L.J. 1945, 1948–49 (1997) (discussing procedural avoidance and collecting cases). But that approach is not open to us here for the reasons Judge Hamilton explains at length in his dissent, *see post*, at 44–45 (Hamilton, J., dissenting), and Judge Easterbrook also mentions in his concurrence, *see ante*, at 17–18 (Easterbrook, J., concurring in the judgment). I agree with them on this point and have nothing to add.

It's worth reiterating, however, that the claim for injunctive relief is moot. A "saving" construction is a remedial device to avoid striking a statute as unconstitutional, but here the challenged ordinance is no longer on the books. A limiting construction can't be applied retrospectively and used as a basis to reject a claim for damages—at least not where, as here, the parties agree that the statute was uniformly interpreted and applied more broadly.

\*    \*    \*

On closer review I've concluded that Markadonatos lacks standing on both the substantive *and* procedural aspects of his due-process claim. This is, of course, a jurisdictional inquiry that must precede consideration of the merits. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also* U.S. CONST. art. III, § 1.

The familiar requirements of Article III standing are these: (1) the plaintiff must have suffered a concrete "injury in fact"; (2) the injury must be fairly traceable to the defendant's allegedly unlawful conduct; and (3) "it must be likely, as opposed to merely speculative, that the injury will be re-dressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted).

There's no doubt that the first requirement is satisfied here. Markadonatos paid the $30 booking fee. The problem arises at step two of the standing inquiry. As Markadonatos has framed his constitutional claim—in both its procedural and substan-tive aspects—his injury is not fairly traceable to the Village's allegedly unconstitutional conduct.

Although his arguments have evolved during the course of this appeal, at this point Markadonatos offers three basic reasons why the booking-fee ordinance is unconstitutional: (1) the fee is collected without a predeprivation hearing or a postdeprivation process to obtain a refund; (2) the fee is arbitrary and irrational as applied to those who are unlawfully arrested;[2] and (3) the fee is arbitrary and irrational as applied

---

[2] *See* Appellant's Br. at 30, ECF No. 62 ("Woodridge's scheme is 'irrational' and 'arbitrary' because it forces people who are illegally arrested to

(continued...)

to those who are never charged or are found not guilty.[3] The first is an argument about procedure; the other two address the substantive terms of the ordinance.

Because Markadonatos concedes probable cause to arrest and in fact admitted his guilt in court, he can't press an argument that the fee is irrational as applied to innocent or wrongfully arrested people. *See Sickles v. Campbell County*, 501 F.3d 726, 732 (6th Cir. 2007) (holding that plaintiffs who pleaded guilty lack standing to challenge the county's collection of jail costs as applied to those who are "arrested, booked and immediately released because of mistake") (internal quotation marks omitted); *ante*, at 17 (Easterbrook, J., concurring in judgment). So the substantive component of the due-process claim drops out of the case because the plaintiff lacks standing to challenge the fee on this basis.

The remaining argument about defective *process* also relies on a claim about substantive flaws in the ordinance, which affects the analysis of the plaintiff's standing to challenge the fee on procedural due-process grounds. As I've explained, Markadonatos's claim about deprivation of process rests on a premise that the fee cannot be imposed without a predeprivation hearing to test the validity of the arrest, or alternatively, that the Village must at least provide some postdeprivation procedure so that those who are wrongfully arrested, never charged, or found not guilty may obtain a refund. Again, this

---

[2] (...continued)
subsidize the illegal deprivation of their liberty.").

[3] *See id.* at 31 ("[T]he only reason for Woodridge to link its fee to arrests rather than to convictions is to take money from the innocent in addition to the guilty.").

argument ties the procedural due-process claim to a conclusion about the *substantive* constitutionality of the ordinance. Restated, the argument is essentially this: Because the fee is not rational as applied to those who are wrongfully arrested, never charged, or found not guilty, a hearing is necessary to prevent its erroneous application to people in these groups.

But Markadonatos doesn't challenge the validity of his arrest and has admitted his guilt in court. That is, he does not contest any facts that would be relevant to the hearing that he claims the Constitution requires. As such, he has suffered no harm that is fairly traceable to the alleged deprivation of process about which he complains.

The standing problem in this case straddles *Codd v. Velger*, 429 U.S. 624 (1977), and *Carey v. Piphus*, 435 U.S. 247 (1978), two cases that were decided a year apart but seem to point in opposite directions. In *Codd* the Supreme Court held that a person cannot make a procedural due-process claim when he does not assert that a factual dispute exists for a due-process hearing to resolve. The case involved a police officer who lost his job during the probationary phase of his employment. 429 U.S. at 624–25. His personnel file contained a report that he had attempted suicide, which he claimed hurt his job prospects at other law-enforcement agencies. *Id.* at 626. Although as a probationary employee he did not have a property interest in his job, he claimed that the stigmatizing nature of the report about his suicide attempt entitled him to a hearing. *Id.* The Court granted certiorari to determine whether the case came within the doctrine established in *Board of Regents v. Roth*, 408 U.S. 564 (1972), and *Bishop v. Wood*, 426 U.S. 341 (1976).

In the end, however, the Court found it unnecessary to decide this question because the officer had not asserted that

the report of his suicide attempt was false. *Codd*, 429 U.S. at 627. The Court held that "if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation." *Id.* The officer had claimed a right to a hearing to "clear his name." *Id.* The Court concluded that because "he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him." *Id.* at 627–28.

In *Carey*, decided the following year, the Supreme Court held that a violation of procedural due process is actionable without proof of actual damages. 435 U.S. at 266–67. Elementary and secondary school students sought damages for deprivation of their due-process rights after they were suspended without a hearing for violating school rules. The Court held that the students were not required to prove actual damages: "Even if [the] suspensions were justified, and even if they did not suffer any actual injury, the fact remains that they were deprived of their right to procedural due process." *Id.* at 266. The Court remanded the case with specific instructions to the district court: If the court concluded that the suspensions were valid under school rules, the claim for compensatory damages would fail, but the students were nonetheless entitled to "nominal damages not to exceed one dollar" for the deprivation of process. *Id.* at 267.

The results in *Codd* and *Carey* seem contradictory, but the Tenth Circuit persuasively explained the difference between the two cases in *Rector v. City & County of Denver*, 348 F.3d 935, 944 (10th Cir. 2003). *Rector* involved a challenge to the parking-enforcement regime in the City of Denver. The City's standard

parking ticket form notified the recipient that the parking fine must be paid or contested within 20 days and also warned that if payment was not received within that 20-day period, certain late fees automatically applied. *Id.* at 937–38. The plaintiffs—two people who were ticketed for parking violations and paid the fines—sued the City claiming that the late-fee notice was misleading because in actuality, "as long as the recipient appears before the parking referee within twenty days, the late fee is not imposed." *Id.* at 942. They complained that the "categorical" language on the face of the ticket "pressures recipients to pay rather than challenge the ticket" and thus violates due process because it "restricts a putative violator's opportunity to be heard and to present objections." *Id.*

But the plaintiffs in *Rector* did not assert any basis on which they would have contested their tickets. This cast significant doubt on their standing to sue for interference with their procedural rights. Reconciling *Codd* and *Carey*, the court extrapolated an important standing principle in procedural due-process cases:

> The distinction between *Codd* and *Carey* lies in adopting an *ex ante* perspective on the right to due process hearings. The *Carey* plaintiffs denied the substance of the underlying allegations made against them. Their injury, viewed *ex ante*, is that they were denied the opportunity to convince school administrators that they should not be suspended. Thus while *ex post*, their loss on the merits precluded any claim for compensatory damages, the denial of the opportunity to sway school officials toward their cause constituted an injury in fact. By contrast, the plaintiff in *Codd*

> did not challenge the substantial truth of the damaging material set forth in his file. Even by his own reckoning of the facts, the hearing would not have vindicated any rights.

*Rector*, 348 F.3d at 944 (internal citations omitted).

The *Rector* plaintiffs were more like the police officer in *Codd* than the students in *Carey*. They did not assert any grounds on which they would have contested their parking tickets. So the Tenth Circuit concluded that they lacked standing to claim a violation of their hearing rights. Their injuries—payment of the parking fines—were not fairly traceable to the alleged defect in the notice; their hearing rights were unaffected "because there was nothing for a hearing to decide." *Id.* at 945.

As *Rector* explains, under *Carey* a person claiming a violation of procedural rights may have an injury in fact regardless of whether he would have prevailed at the hearing that is the subject of his claim. "Parties may suffer injury in fact from defective procedures even if, at the end of the day, they would not have prevailed on the merits." *Id.* at 943; *see also Buckley v. Fitzsimmons*, 20 F.3d 789, 796 (7th Cir. 1994) (noting that a "denial of procedural rights is a form of injury"). But the standing inquiry does not end with a finding of injury in fact. *Codd* shows that in a due-process case, the plaintiff must also allege that he would have challenged *something* at the hearing that he contends is constitutionally required. *See Rector*, 348 F.3d at 944 (citing *Michael H. v. Gerald D.*, 491 U.S. 110, 127 n.5 (1989) (plurality opinion) ("We cannot grasp the concept of a 'right to a hearing' on the part of a person who claims no substantive entitlement that the hearing will assertedly

vindicate.")). Otherwise his injury is not "fairly traceable" to the alleged deprivation of process.

Here, Markadonatos does not wish to contest any facts that would be relevant to the hearing he claims is constitutionally required; he concedes that he was lawfully arrested for retail theft and admitted his guilt in court. Accordingly, his injury is not fairly traceable to the alleged constitutional violation on which his claim rests.

Judge Posner does not directly address the plaintiff's standing, but the issue can't be skipped over or summarily brushed aside. *See DaimlerChrysler Corp.*, 547 U.S. at 341 ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so.").

In his concurrence Judge Easterbrook writes that Markadonatos has standing to raise a substantive challenge to the ordinance, but *only* to the extent that he "maintains … that the fee is constitutionally obnoxious even when the arrest is supported by probable cause and followed by a conviction." *See ante*, at 17 (Easterbrook, J., concurring in the judgment). But Markadonatos hasn't advanced a claim that municipalities are constitutionally forbidden to assess a booking fee on people in this category. He has never argued that booking fees are arbitrary and irrational in *all* circumstances, quite apart from the processes used to collect them. Rather, the "substantive" dimension of his due-process claim has always been that the fee cannot rationally be applied to persons who are wrongfully arrested or innocent.[4] Indeed, he expressly accepts that it's

---

[4] *See* Appellant's Br. at 28–29, ECF No. 62 ("It is indisputable that the
(continued...)

rational to impose a booking fee on those who are found guilty.[5]

This brings me to a final point about Judge Hamilton's analysis of standing, which suggests that Markadonatos and everyone else who paid the booking fee may challenge it simply by virtue of having paid it—in other words, that the payor's personal circumstances just do not matter. That's true in general for facial constitutional challenges. *See Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011) ("In a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiff's personal situation becomes irrelevant."). And it's also true that Markadonatos asserts that he is mounting a facial challenge to the fee. But he never actually does so. As I've explained, both dimensions of his due-process claim rest on the substantive premise that the fee is irrational as applied to those who are wrongfully arrested or innocent.

---

[4] (...continued)
government cannot impose fees on persons arrested for no reason, for invidious reasons, or simply to harass the arrestee. … Some *separate* showing is therefore constitutionally necessary to justify charging an arrestee for the hassle of being arrested. Whatever that constitutionally required showing might be—probable cause, preponderance of the evidence, guilt beyond a reasonable doubt—there is no question that Woodridge will be unable to make that showing for many people whom its police arrest, such that charging *those* arrestees a $30 fee is constitutionally unjustified.").

[5] *See id.* at 26 ("Woodridge could either incorporate an assessment of the fee's legitimacy into the probable cause hearing or could simply add the fee to the panoply of costs imposed on those who are criminally convicted or plead guilty.").

To repeat, Markadonatos does not argue that the substantive component of the Due Process Clause prohibits Woodridge from requiring lawfully arrested and actually guilty persons to pay a booking fee. He argues only that substantive due process prohibits the Village from requiring an *unlawfully arrested* or *actually innocent* person to pay a booking fee. And his claim about defective *process* posits that a hearing is constitutionally required to ensure that the payor has at least been lawfully arrested (because it's irrational to require an unlawfully arrested or innocent person to pay). These arguments are contingent, not categorical, and as such they require a plaintiff with the relevant characteristics to connect the injury in fact—here, payment of the fee—to the alleged constitutional wrong. That's what the traceability element in standing doctrine insists upon.

Because Markadonatos lacks standing to bring the claims he has actually raised, I would vacate and remand with instructions to dismiss the case for lack of jurisdiction.

HAMILTON, *Circuit Judge*, joined by WOOD, *Chief Judge*, and ROVNER and WILLIAMS, *Circuit Judges*, dissenting. I respectfully dissent from the affirmance of the dismissal of this case, though I share a good deal of common ground with the opinion by Judge Posner. We agree that being arrested is not a service to the person arrested. We agree that the plaintiff has standing to challenge the arrest fee policy despite having pled guilty to the offense for which he was arrested. We also agree that there is a critical constitutional difference between an arrest fee and an administrative fee for bail.

Our point of disagreement is that, in the face of a plainly unconstitutional fee for the privilege or "service" of being arrested, Judge Posner has chosen not to decide the case that has actually been presented to us. His opinion chooses instead to decide a different case, one shaped by rewriting the ordinance and overlooking the plaintiff's allegations. That approach avoids the troubling due process analysis of the now-vacated panel opinion, but at the cost of disregarding basic rules of civil procedure and misusing the doctrine of constitutional avoidance.

Judge Posner's opinion finds a difference between the meaning of the ordinance and the village's actual practice of collecting arrest fees. Even if that's correct, it would not warrant dismissal. The plaintiff alleged in his complaint that his rights were violated by the village's actual policy and practice of charging the fee for arrest, whether or not that policy complied with the ordinance. Nor is there any factual dispute about how the policy functioned in practice. Through three years of litigation, the village has said over and over that it in fact imposed the arrest fee on everyone who was arrested simply because they were arrested.

Judge Posner's opinion has transformed an unconstitu-
tional fee for going *into* jail into something it never was in
practice: an administrative fee for getting *out* of jail. We
should instead decide the case the parties have actually pre-
sented and hold the arrest fee unconstitutional. The Due
Process Clause of the Fourteenth Amendment does not al-
low a state or local government to deprive a person perma-
nently of even a modest amount of his property based on
nothing but the unreviewable say-so of one police officer.
The victim of such an arbitrary policy has standing to chal-
lenge it at the moment his property is taken. That remains
true regardless of whether the deprivation might have been
constitutional under a very different ordinance or policy that
would have imposed the fee on a different basis, such as
posting bail or being convicted of a crime.

I.   *The Transformation of the Case*

A Woodridge police officer arrested plaintiff Jerry
Markadonatos for shoplifting. When he was booked into the
local jail, he was charged an "Arrest/Booking Fee" of $30.
The fee applied to every arrest, period. It applied regardless
of whether the arrestee posted bail, regardless of whether he
was ever prosecuted, regardless of the outcome of any pros-
ecution, and even regardless of the validity of the arrest.
Plaintiff paid the money and then sued for its return, alleg-
ing that the fee deprived him and all other arrestees of prop-
erty without due process of law.

The full language of the ordinance, repealed shortly be-
fore we granted rehearing en banc, provided: "The fees for
the following activities and purposes shall be as follows: (A)
Booking fee: When posting bail or bond on any legal pro-
cess, civil or criminal, or any custodial arrest including war-

rant—$30.00." Judge Posner is correct that the ordinance was not well-drafted. But throughout the litigation, the parties have agreed that a person had to pay the fee just because he was arrested. That's how the ordinance was administered, and that's the case presented to us.

Judge Posner's opinion concludes, however, that the plaintiff, the village, their lawyers, the district judge, and the three-judge panel have all misunderstood the ordinance. In our en banc oral argument, the suggestion was raised for the first time that the ordinance could be read as imposing a fee only when a person posted bail or bond, regardless of whether it was for a custodial arrest, a warrant, or any other form of legal process. Recognizing how troubling an arrest fee would be under the Due Process Clause, Judge Posner's opinion adopts this new interpretation by invoking the doctrine of constitutional avoidance.

This transformation of the case ignores the most basic constraint in deciding a motion to dismiss under Rule 12(b)(6): treat as true the factual allegations in the plaintiff's complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). The complaint here alleges a policy and practice of imposing the fee based solely on the fact of arrest, in violation of the Constitution. Those allegations stand regardless of whether the village misinterpreted its own ordinance, and regardless of whether other events (like posting bail or later pleading guilty) might have justified a different fee under a different hypothetical ordinance.

The plaintiff's complaint makes clear that his case depends not on the wording or abstract interpretation of the ordinance but on the village's actual policy and practice of collecting an arrest fee just for going into jail. Paragraph 1 of the First Amended Complaint (the operative one at this stage) alleges: "The booking fee policy is procedurally and substantively unconstitutional." The complaint refers several more times to the booking fee policy. See ¶¶ 3, 4, 15, 16, 37. Other allegations in the complaint also describe the Village's actual practice, regardless of whether that practice was authorized by the ordinance. See ¶¶ 17, 20, 25, 26, 36, 45. The plaintiff alleges that the money was taken from him upon booking, not when he made bail (which he paid separately). And the complaint does not even mention bail or bond.

During the en banc argument, counsel for the plaintiff stated in response to questioning that his client paid $150 for release on bond. That fee was different from the arrest fee at issue here. When reviewing a Rule 12(b)(6) dismissal, we can and should consider such new factual assertions as long as they are consistent with the complaint. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555–56 (7th Cir. 2012); *Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850, 861 (7th Cir. 1999). This is especially so when the new information is provided in response to questions that had not been considered even relevant before the argument.

Exhibits attached to the complaint are also part of the complaint, of course. See Fed. R. Civ. P. 10(c); *Tellabs*, 551 U.S. at 322. The receipt the village gave the plaintiff is part of this complaint. Judge Posner's opinion does not mention the receipt, and it's flatly inconsistent with his theory. The heading says "Arrest/Booking Fee Notice." The text says: "You are

hereby notified that under Village Ordinance #5-1-12, an administrative fee of $30.00 is required upon completion of any custodial arrest/booking procedure. The Complainant named above by its Police Officer, on oath states that you were arrested on: [date of arrest, name, date of birth, and address]." The receipt goes on to say that "Fee of $30.00 is due fifteen days from date of arrest." The receipt thus shows a fee imposed for arrest, not for release on bail. In fact, nothing in the receipt suggests the fee has anything to do with bond, bail, or release from jail, and the provision for delayed payment obviously does not fit with a fee for posting bail.

The limited record before us is thus fully consistent with the plaintiff's allegations that he was charged the fee for his arrest. Judge Posner's opinion points to nothing that would even contradict that account, let alone resolve such factual issues against the plaintiff on a motion to dismiss. We do not know if the plaintiff was charged additional fees when he posted bond—only that the bond itself cost $150. What matters at this stage is that the plaintiff has plausibly alleged that he was charged $30 for being arrested—and *only* for being arrested. We have no basis for concluding otherwise.

As if the plaintiff's allegations were not enough, the village has never disputed the factual foundation of his case: that the arrest fee is triggered only by arrest. Nor has the village ever claimed the fee had anything to do with release from jail, despite being fully aware of the cases approving administrative fees for state bail-bond systems. That was not an oversight by counsel. It was simply an acknowledgment that this was in fact an arrest fee, not a bond fee. The village has argued instead that the fee was justified by the "service" of being arrested, such as the "services" of being photo-

graphed and fingerprinted. No member of the en banc court has endorsed that ludicrous defense.

The village has even tried to make a virtue of the arrest fee's simplicity. At every step of the case, the village has argued that the three-factor due process test under *Mathews v. Eldridge*, 424 U.S. 319 (1976), shows there is no need for any additional procedural protections. Why? Because the only issue is whether the person being charged the arrest fee has actually been arrested, and there is virtually no chance of a mistake about that fact. The district court and the panel majority both agreed and made this simple syllogism the foundation of their decisions. See *Markadonatos v. Village of Woodridge*, 2012 WL 2128386, at *3 (N.D. Ill. June 11, 2012), aff'd, 739 F.3d 984, 989–90 (7th Cir. 2014), vacated (March 17, 2014).

Instead of crediting the village's explanation for how it enforced the ordinance, Judge Posner's opinion goes through procedural contortions to construct a different past policy and decides the case on that basis. But the bottom line is that the plaintiff has alleged—and the village has not disputed—a set of facts that present a viable claim for damages for violation of his federal constitutional rights by reason of a municipal policy. See *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). The viability of that claim simply does not depend on whether we can interpret the ordinance better than the village that administered it.

II. *Constitutional Avoidance?*

Faced with the consistent account of the arrest fee policy in the plaintiff's allegations, the village's arguments, and the decisions of the district court and the appellate panel, Judge

Posner's opinion asserts that all have been mistaken. The opinion offers its novel interpretation of the ordinance in the name of constitutional avoidance, the practice of interpreting statutes so as to avoid serious constitutional issues if that can be done without undue violence to the statutory language.

Because the Supreme Court has upheld certain administrative fees for the service provided by state bail-bond systems, Judge Posner prefers to read the ordinance as imposing the fee solely for posting bond and not for the mere fact of custodial arrest. See *Schilb v. Kuebel*, 404 U.S. 357 (1971); see also *Payton v. County of Carroll*, 473 F.3d 845 (7th Cir. 2007). The opinion overlooks that the fees in *Schilb* and *Payton* were optional, unlike the village's arrest fee here. In those cases, arrestees had other options for obtaining release, and bail decisions were of course subject to court supervision.

While constitutional avoidance has been criticized extensively as an interpretive tool, it retains a secure place in Supreme Court decisions.[1] If the plaintiff were seeking only injunctive or declaratory relief about how the village should administer the ordinance going forward, constitutional avoidance would thus offer a plausible basis for resolving the case without invalidating the ordinance.

---

[1] For critiques, see, e.g., Frank H. Easterbrook, *Do Liberals and Conservatives Differ in Judicial Activism?* 73 U. Colo. L. Rev. 1401, 1405–06, 1409 (2002) (describing this interpretive canon as "noxious," "wholly illegitimate," and "a misuse of judicial power"); Richard A. Posner, *Statutory Interpretation—in the Classroom and in the Courtroom*, 50 U. Chi. L. Rev. 800, 815–16 (1983) (canon has effect of unduly enlarging "already vast reach of constitutional prohibition"); Henry J. Friendly, *Benchmarks* 210–12 & n.88 (1967) (canon has "almost as many dangers as advantages" and should not be used to dismiss indictments *or civil complaints* before the facts are developed).

The problem here is that the plaintiff is seeking damages for an unconstitutional policy practiced in the past. Judge Posner has not cited any cases using the doctrine of constitutional avoidance in this context, and for good reason. The doctrine is meant to function in the mold of Professor Bickel's "passive virtues," minimizing friction between branches of government by deciding cases on narrow grounds where possible. Alexander Bickel, *The Least Dangerous Branch* 175–83 (2d ed. 1986); see also *Clark v. Martinez*, 543 U.S. 371, 381 (2005) (avoidance meant to give effect to legislature's intent instead of "subverting it" by invalidating statute).

Properly understood, constitutional avoidance is a mechanism for saving legislation for the future, not a device for wishing away past violations of constitutional rights. The cases cited by Judge Posner reflect this limitation. In every such case, constitutional avoidance was used to limit the government's actions or to deal with requests for injunctive relief, not to excuse past violations of constitutional rights. See *Rust v. Sullivan*, 500 U.S. 173, 181 (1991) (plaintiffs sought injunction and declaratory relief); *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 317 (1936) (plaintiffs sought to enjoin performance of contract); *Crowell v. Benson*, 285 U.S. 22, 62 (1932) (interpreting statute to permit judicial review of ALJ's award of worker's compensation); *Hooper v. California*, 155 U.S. 648 (1895) (affirming criminal conviction by declining to read state statute as having extraterritorial application); *Parsons v. Bedford*, 28 (3 Pet.) U.S. 433 (1830) (reading federal statute to limit appellate review of jury verdict and thus to preserve Seventh Amendment rights). Other prominent cases endorsing constitutional avoidance are similar. See *Clark*, 543 U.S. at 381–82 (aliens in detention entitled to habeas corpus relief); *Edward J. DeBartolo Corp. v. Florida Gulf*

*Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)
(denying enforcement of NLRB order); *NLRB v. Catholic
Bishop of Chicago*, 440 U.S. 490, 499–501 (1979) (denying en-
forcement of NLRB order); *United States ex rel. Attorney Gen.
v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909) (govern-
ment sought to enjoin vertical integration of coal producers
and railroads).

Constitutional avoidance simply has no place in a case
like this, where the plaintiff has alleged a claim for damages
for a past violation of his constitutional rights. Judge Pos-
ner's novel revision of the village's ordinance therefore pro-
vides no basis for affirming the Rule 12(b)(6) dismissal of the
plaintiff's claim for damages.[2]

III. *The Merits of the Village's Actual Policy*

Returning to the merits of the case actually presented to
us, this is a simple case. The village took property from all
arrestees without due process of law. The deprivations oc-
curred at the time of arrest, immediately and finally. The or-
dinance allowed no room for dispute or review of any kind.
The deprivations occurred based on only the say-so and
perhaps even the whim of one arresting officer, regardless of
whether the arrestee was ever prosecuted or convicted, and
regardless of whether the arrest was lawful in the first place.
By no stretch of the imagination can that be due process of
law.

---

[2] If plaintiff can prove the alleged policy, the village should be liable for
damages whether or not it had repealed the ordinance. Judge Posner's
discussion on pages 11–12 of the incentives for local governments is thus
something of a non sequitur.

A good deal of ink has been spilled in this case (by me and others) on whether the problem is better understood in terms of procedural due process or substantive due process. The village has defended the fee with a strategy of divide-and-conquer. If the claim is limited to a procedural due process theory along the lines of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Goldberg v. Kelly*, 397 U.S. 254 (1970), where the issue is how much process is needed, and when, to decide a disputed factual or legal question, the village defends the lack of any process on the simple theory that there is no serious chance of an error in imposing the fee. If the claim is limited to substantive due process, the village argues that the plaintiff has no "fundamental right" in an amount of cash that most lawyers and judges would view as modest, and the substantive result—a $30 fine for (suspected) criminal conduct—does not shock anyone's conscience.

The problem is actually more fundamental than these two distinct branches of modern due process jurisprudence: the arrest fee denies due process because it imposes a permanent deprivation of property based on the unreviewable decision of one police officer. We don't tolerate such arbitrary government deprivations even for parking tickets. See *Van Harken v. City of Chicago*, 103 F.3d 1346, 1350 (7th Cir. 1997) (rejecting due process challenge to parking ticket regime because it allowed for administrative and judicial review); *Gardner v. City of Columbus*, 841 F.2d 1272, 1276–77 (6th Cir. 1988) (same). The village's arrest fee provided neither process nor law in any recognizable form. This arrest fee is indistinguishable from a fee the police might charge merely for subjecting you to a traffic stop, a breathalyzer test, a *Terry* stop and frisk, or for executing a search warrant at your house.

Why would all of those fees be unacceptable? The constitutional guarantee of due process is at bottom a requirement that the government act according to the rule of law. That requirement is implicit in the phrase "due process of law" itself and evident from its long history since King John promised in the Magna Carta not to dispossess or imprison his subjects except "by the law of the land." Influenced by this history, our Nation's founding generation sought to ensure the rule of law so that neither a tyrannical executive nor any other organ of government could impose its will arbitrarily. See, e.g., Thomas Paine, *Common Sense* (1776), reprinted in *The Great Works of Thomas Paine* 33 (1877) ("For as in absolute governments the king is law, so in free countries the law ought to be king"); John Adams, A Defence of the Constitutions of Government of the United States of America, in 4 *The Works of Johns Adams* 404 (1851) ("where the public interest governs, it is a government of laws, and not of men"); The Federalist No. 51 (James Madison) (noting dangers of any branch of government becoming too powerful).

This commitment to the rule of law runs throughout the Supreme Court's due process jurisprudence, which has long reflected the "traditional and common-sense notion that the Due Process Clause, like its forebear in the Magna Carta, was 'intended to secure the individual from the arbitrary exercise of the powers of government.'" *Daniels v. Williams*, 474 U.S. 327, 331–32 (1986), quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884), quoting *Bank of Columbia v. Okely*, 17 U.S. 235, 244 (1819). This foundation is obvious both in cases applying the substantive strand of due process, see *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) ("Since the time of our early explanations of due process, we have understood the core of the concept to be protection against

arbitrary action."), as well as in purely procedural cases, see *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government."); *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972) (procedural protections such as notice and a hearing "protect against arbitrary deprivation of property").

A fee based on the unreviewable say-so of one police officer is an arbitrary deprivation of property. An arrest fee of $30 does not, of course, threaten the end of individual liberty or property rights as did the confiscation of an English baron's entire estate. But the village's arrest fee still imposed permanent deprivations of property on everyone arrested in the village. And as Judge Posner's opinion acknowledges, that deprivation cannot seriously be justified as a service to the arrestee.

If the theory is that the arrestee has done something criminal to justify the arrest and the fee, as the district judge and panel majority reasoned, that's a question we answer through the due process provided by the criminal justice system, not on the unreviewable say-so of one arresting officer. See *In re Winship*, 397 U.S. 358, 361 (1970); *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993). Even a suspect's confession to an officer on the spot is only evidence. It does not entitle the officer to impose judgment and punishment.

Contrary to Judge Easterbrook's opinion, even where an arrest is supported by probable cause—and again, the village imposed this arrest fee regardless of whether it was—probable cause is too low a bar to justify a *permanent* deprivation of property. Permanence of the deprivation is the key difference between this case and forfeiture cases like *Kaley v. United States*, 134 S. Ct. 1090, 1098 (2014). They allow tempo-

rary interference with property on the basis of probable cause but have never suggested probable cause is sufficient for a permanent deprivation. Nor is it any answer to say that because the police can hold an arrestee for up to 48 hours without bringing him before a judge, see *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), the fact of custodial arrest justifies extra deprivations of liberty or property. Unlike the temporary limits on the arrestee's freedom of movement in the hours before he can see a judge, the $30 fee is not an inevitable consequence of custodial arrest.[3]

Finally, Judge Posner suggests (at page 14) that the plaintiff here doesn't really have much to complain about. The fee could have been constitutional under a different ordinance, such as one written to impose the fee only after a plea or judgment of guilty, and this plaintiff admitted the offense here. The first problem with that suggestion is that that's not what the village did. The second problem is that the right to fair procedure applies to the innocent and guilty alike. E.g., *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions").

---

[3] My colleagues' focus on whether an arrest was made with probable cause misses the constitutional point for another reason. Probable cause was simply not relevant under the village's ordinance and policy. Moreover, a person can be arrested with probable cause without having done anything wrong, or even anything suspicious. Consider a case of mistaken identity, where a police officer conducting a traffic stop learns there is an outstanding arrest warrant for someone with the same name as the driver. An arrest may be made with probable cause, but there is no justifiable reason for charging the arrestee a fee for the experience.

IV. *The Plaintiff's Standing to Sue*

A majority of the court agrees that the plaintiff has stand-ing to challenge the village's policy. Judge Sykes takes a dif-ferent view in her opinion and would instead remand the case to the district court to dismiss for lack of standing. Judge Easterbrook agrees with her in part. Because the plain-tiff pleaded guilty to shoplifting, and the government can impose fines on those who are found guilty of a crime, Judge Sykes would hold that the plaintiff's injury of being charged the $30 is "not fairly traceable to the Village's allegedly un-constitutional conduct." Sykes, J., at page 29. This approach confuses the merits of the plaintiff's claim with his standing to bring it, and the approach is based on a different ordi-nance or policy than the one actually before us.

Standing is an inquiry separate from the merits and is not a difficult hurdle to clear, especially for a plaintiff who asks for the return of his property taken by the government. See, e.g., *Construction Indus. Ret. Fund of Rockford v. Kasper Truck-ing, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993) ("a litigant doomed to lose does not for that reason lack standing to sue"). As we recently explained:

> At the pleading stage Article III standing is something to be alleged, not proved. All that must be alleged is an injury, personal to the person seeking judicial relief, that the court can redress, an injury such as the injury inflicted by the government when it has got hold of money that belongs to the person and refuses to return it. This is constitutional law 101.

*United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 651 (7th Cir. 2013).

The requirements for standing are easily satisfied here. The plaintiff suffered an injury when the village took his $30. He alleges that the money was taken pursuant to the defendant's unconstitutional policy of collecting the money from all arrestees. A court could redress his injury by finding the policy unconstitutional and awarding damages. That's enough. See, e.g., *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing does not depend on whether the plaintiff will ultimately prevail on his constitutional claim. Nor does standing depend on whether the village might have been able to justify a $30 fee under a different policy or ordinance that has not been alleged by the plaintiff or supported by the pleadings (or even argued by the village).

Like Judge Posner, Judge Sykes would resolve this case by hypothesizing yet a different municipal practice or ordinance than the one actually alleged here, but she relies on a third version. Because the village *could have* charged those it arrested a $30 fine upon their conviction, she reasons, this plaintiff lost standing to challenge the village's actual policy of charging all arrestees at the time of arrest when he entered a guilty plea. But Article III standing is no more appropriate a tool for rewriting the arrest fee than is the doctrine of constitutional avoidance.

Under the village's actual policy, the due process violation occurred at the moment the arrestee was brought to jail and paid the $30 fee for no reason other than his arrest. That was an arbitrary deprivation of property without any process of law. And at that moment after payment, plaintiff

Markadonatos or any other arrestee had a ripe due process claim.

Anything that happened later—posting bail, pleading guilty, or anything else—is irrelevant to the constitutional question. It's irrelevant because what happened later was irrelevant under the village's own policy. The plaintiff and all other arrestees paid the fee regardless of whether they ever faced charges or were ever convicted. They all suffered the same denial of due process the minute the money was taken from their pockets. See *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (procedural safeguards apply "whatever the ultimate outcome of a hearing"), quoting *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972). The fact that the fee might have been lawfully imposed on some arrestees under a different hypothetical policy—one that charged the fee only to those ultimately convicted—does not save the village's actual practice any more than a subsequent criminal conviction could justify a mandatory fee for a traffic stop, a *Terry* stop and frisk, or execution of a search warrant.

The due process violation here is so fundamental that plaintiff's standing cannot be defeated by *Codd v. Velger*, 429 U.S. 624 (1977), or *Rector v. City & County of Denver*, 348 F.3d 935 (10th Cir. 2003), the reasoning of which Judge Sykes endorses. Those cases addressed an unusual wrinkle in the law of procedural due process. They held, *Codd* on the merits and *Rector* on standing, that the plaintiffs had no viable basis for demanding more process when there was no underlying dispute that a hearing could have resolved. *Codd* and *Rector* would be relevant here if the village had adopted a different policy or ordinance, to collect an arrest fee from each arrestee who was convicted of a crime arising from the arrest.

That's not this case. Although this plaintiff also argues that he was denied sufficient process, he does not seek a meaningless hearing to determine whether he was arrested or not. He instead challenges the arrest fee as an utterly arbitrary deprivation of property. It was imposed permanently by the unreviewable act of one police officer, with no process at all. *Codd* and *Rector* were simply not addressed to such a basic violation of due process.

## V. *The Silver Linings*

The result of the court's en banc vote is bad news for plaintiff Markadonatos. His later guilty plea seems to have made him an unsympathetic champion for due process, but he should be allowed to pursue his claim and to seek class certification.

Yet for others who were required to pay the Woodridge arrest fee or who might be required to pay similar fees in the future, there are actually some silver linings in the en banc decision: (1) The erroneous panel opinion has been vacated. (2) A majority of court signals clearly that any similar arrest fee is likely to fail a future due process challenge. (3) A majority of the court finds that plaintiff has standing to assert his claim. (4) Judge Posner's procedural contortions to avoid the effect of plaintiff's actual allegations have not been endorsed by a majority of the court. (5) No theory for denying relief has the support of a majority of this court. So while I respectfully dissent from affirmance of dismissal in this case, I hope these signals will discourage the Village of Woodridge and any other governments from adopting a new

arrest fee or policy and risking similar litigation and a fee
award under 42 U.S.C. § 1988.[4]

---

[4] Readers interested in the precedential effects of our court's divided
vote, where no one judgment garnered a majority, may find an interest-
ing discussion of the phenomenon in Michael L. Eber, *When the Dissent
Creates the Law: Cross-Cutting Majorities and the Prediction Model of Prece-
dent*, 58 Emory L. J. 207 (2008), and sources cited therein.