STADTMUELLER, District Judge.
Under Title 5 of its Village Code, the Village of Woodridge charges every arres-tee in its custody a $30 booking fee. Indeed, after Woodridge police arrested the plaintiff-appellant for retail theft on January 8, 2011, the Village collected its $30 booking fee from him, without any opportunity to contest that collection either before or after the fee was taken. Mr. Mar-kadonatos is not alone — Woodridge has taken the same $30 fee from each of the *987 large number of people arrested and booked in its vicinity. Thus, Mr. Marka-donatos filed the putative class action suit at hand, under 42 U.S.C. § 1983, asserting that Woodridge’s booking fee violates both the procedural and substantive due process rights of the class members. The district judge dismissed Mr. Markadona-tos’ initial and amended complaints, finding that Mr. Markadonatos had not stated a claim for relief. We agree. Mr. Marka-donatos’ procedural due process argument necessarily fails, and he lacks standing to seek relief under a substantive due process claim. We therefore affirm the decision of the district court.
I. Background
Woodridge enacted Municipal Code 5-1-12(A), which imposes a $30.00 booking fee on any person subject to a custodial arrest. (Am.ComplJ 12). Woodridge collects this fee without any hearing, and does not offer arrestees any opportunity to challenge the deprivation or seek reimbursement. (Am. CompLM 16-17).
Mr. Markadonatos was arrested and charged with retail theft on January 8, 2011, and taken to jail. (Am.Compl.U 18-19). He was booked, and at that time, Woodridge collected its $30.00 booking fee from him. (Am.ComplJ 20). Woodridge provided Mr. Markadonatos with a booking fee receipt, but did not ever provide him with a hearing at which he could challenge the booking fee. (Am. ComplJ 20).
Thereafter, a court ordered that Mr. Markadonatos undergo a period of supervision, pursuant to Illinois law. (Am. ComplJ 21). Mr. Markadonatos successfully completed that period of supervised release, and therefore received an adjudication of “not guilty” on his record. (Am. ComplJ 22). Despite that favorable adjudication, Mr. Markadonatos never had an opportunity to seek the return of his booking fee, and he has never received a refund of the money that Woodridge seized from him. (Am.Compl.M 23, 24).
Accordingly, he filed suit on behalf of himself and all of the arrestees who have been charged the booking fee, pursuant to 42 U.S.C. § 1983, arguing that the lack of a procedure to challenge the booking fee, as applied to each of arrestee individually, violates the arrestees’ procedural and substantive due process rights. (Am. Compl.U 1, 27-28, 35^4).
After allowing Mr. Markadonatos to file an amended complaint, the district court dismissed the case for failure to state a claim upon which relief could be granted, without ruling on the plaintiffs motion to certify a class. (Order, 7/10/12, at 7, 9).
Mr. Markadonatos appealed that decision to this Court, arguing that the district court erred in dismissing his amended complaint. We disagree and affirm.
II. Discussion
The parties’ briefs and arguments have focused upon substantive issues relating to procedural and substantive due process, but before we reach those substantive arguments, we must first address the issue of standing. We, of course, lack jurisdiction over this matter, as did the district judge, to the extent that we determine that the plaintiffs allegations do not establish a “case or controversy.” See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
After we make the standing determination, we may then turn to the substantive legal issues. In doing so, first, we must determine whether the district court erred in concluding that Woodridge’s booking fee does not violate the procedural due process rights of Mr. Markadonatos. Second, we must decide whether the district court erred in dismissing Mr. Markadonatos’ *988 substantive due process challenge to the Woodridge booking fee.
It is important to distinguish between Mr. Markadonatos’ procedural and substantive due process claims, for the two concepts are distinct from one another. Procedural due process rights guarantee that the state not deprive an individual of his or her property without providing adequate procedural safeguards against the erroneous deprivation thereof. See, e.g., Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). To determine whether an individual’s procedural due process rights have been violated, courts generally perform a three-part balancing test, first outlined by the Supreme Court in Mathews. The right to substantive due process, on the other hand, is more nebulous, and typically employed by courts to protect against arbitrary state action that shocks the conscience. County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); Montgomery v. Stefaniak, 410 F.3d 933, 939 (7th Cir.2005).
Regardless of the differences between the concepts, Mr. Markadonatos’ arguments on both procedural and substantive due process present primarily legal issues, which we review de novo. Ray v. City of Chicago, 629 F.3d 660, 662 (7th Cir.2011).

A. Standing

There are essentially three elements for standing. First, the plaintiff must have suffered an “injury in fact,” requiring an invasion of the plaintiffs legally protected interest that is both concrete and particularized and actual or imminent. Second, the injury must have been caused by the conduct he complains of. And, third, it must be likely, as opposed to merely speculative, that a decision in the plaintiffs favor will redress his injury. Lujan v. Defenders of Wildlife, 504 U.S. at 560-61, 112 S.Ct. 2130.
Here, our standing concerns stem primarily from the plaintiffs asserted injury in fact.[1] Mr. Markadonatos complains that he was deprived of $30 as a result of Woodridge’s collection of the booking fee. And, indeed, Woodridge’s collection of $30 is concrete, particularized, and actually did occur.
However, we still question whether Woodridge’s collection of the booking fee was an invasion of Mr. Markadonatos’ legal rights, particularly with regard to his substantive due process claim. On his procedural due process claim, Mr. Marka-donatos has pled that he was deprived of $30 without a legally adequate opportunity to challenge that deprivation. And, to the extent that he is correct, he has standing to assert that claim, although this analysis requires us to delve more deeply into the substantive aspects of Mr. Markadonatos’ procedural due process claim.
His substantive due process claim, on the other hand, gives us pause. Whereas Mr. Markadonatos’ procedural due process claim clearly identifies Woodridge’s alleged invasion of legal rights by its very nature — deprivation of property without legally adequate process — Mr. Markadonatos’ substantive due process claim presents á much vaguer alleged invasion. He attempts to argue that collection of the $30 fee from individuals like him who have been adjudicated “not guilty” violates substantive due process. Mr. Markadonatos’ situation, however, is much narrower than that. In fact, he was arrested for cause and was adjudicated not guilty only after completing a term of supervision as a re- *989 suit of admitting the factual basis for the charges against him. See 730 ILCS 5/5—6— 1(c), 5/5-6-3.1(e), 5/5-6-3.1(f). In the narrowest sense, the eventual not guilty adjudication is largely irrelevant, as Woodridge collected the booking fee on the basis of the arrest. Thus, the fact of a for-cause arrest is much more probative of the question of whether collection of the booking fee from a custodial arrestee who was arrested for cause violates substantive due process. It is certainly a relevant aspect of Woodridge’s collection of the booking fee from Mr. Markadonatos, and cannot be ignored as part of the factual background behind the imposition of the fee. As such, insofar as Mr. Markadonatos wishes to challenge Woodridge’s booking fee on the basis of substantive due process, he may do so only to the extent that Woodridge’s ordinance actually applied to him, as a for-cause arrestee who was later adjudicated not guilty.[2] Therefore, in addressing Mr. Markadonatos’ substantive due process claim, the Court will confine its analysis to addressing the substantive due process implications of imposing the booking fee upon for-cause arrestees taken into custody.

B. Procedural Due Process

Having found that Mr. Markadona-tos has standing to assert his procedural due process claim to the extent he has alleged an invasion of his legally-protected interests, we must perform the Mathews v. Eldridge balancing test to determine whether Mr. Markadonatos stated a claim for a procedural due process violation. Under that test, we must balance (1) Mr. Markadonatos’ private interest in his $30; (2) the risk of erroneous deprivation under Woodridge’s ordinance and probable value of any additional safeguards; and (3) the Government’s interest, “including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” Mathews, 424 U.S. at 334-35, 96 S.Ct. 893. Applying this balancing test, we must conclude that the district court was correct in holding that Mr. Markadonatos cannot state a procedural due process violation based upon Woodridge’s booking fee ordinance. We therefore affirm that aspect of the district court’s decision.

1. Mr. Markadonatos’ Private Interest

Without a doubt, Mr. Markadona-tos has an interest in retaining his $30. That amount is small, and Woodridge is certainly correct to point out that such small cash amounts are generally given little weight under the Mathews balancing test. (Appellee’s Br. at 8-9) (citing Van Harken v. Chicago, 103 F.3d 1346, 1353 (7th Cir.1997); Sickles v. Campbell Cty., 501 F.3d 726, 729-30 (6th Cir.2007); Slade v. Hampton Roads, 407 F.3d 243, 247, 251-53 (4th Cir.2005); Broussard v. Parish of Orleans, 318 F.3d 644, 647-48, 657 (5th Cir.2003)). Nonetheless, we must conclude that the $30 fee is entitled to at least some weight in the balancing scheme.

2. Risk of Erroneous Deprivation

The risk of an erroneous deprivation, here, is practically non-existent. Furthermore, to the extent that any deprivation does exist, additional safeguards would not in any way reduce the risk thereof.
On the first of those points—the fact that risk of erroneous deprivation is practically non-existent—one need only look to the Woodridge scheme. Under the scheme, every person who is arrested is *990 charged the booking fee, regardless of whether they were arrested without probable cause. Thus, a Woodridge employee determining whether to charge the booking fee is presented with a binary choice: “yes” the booking fee must be charged to a person who has been arrested and is being booked by the Village; or “no” the booking fee must not be charged to a person who has not been arrested and is not being booked by the Village. This determination is made all the easier by the fact that the booking fee is collected only upon an individual’s arrest and booking. Thus, the Court cannot envision any situation in which one who has not been arrested is charged the booking fee. That is, it is only when one is arrested and booked that the collection of the fee occurs, thus making the potential for erroneous deprivation practically non-existent.
There is practically no risk of an erroneous deprivation,[3] and, therefore, the need for a hearing — particularly a formal hearing — is extremely low. Barbián v. Panag-is, 694 F.2d 476, 488 (7th Cir.1982) (citing, among many other cases, Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977)). Here, Mr. Markado-natos was arrested and later appeared before a judge. Thus, if he believed that he was not or should not have actually been arrested, he had the opportunity to alert both the arresting officer and the judge hearing his case of that fact. While neither of these opportunities is formally provided for in the statute, they are more than sufficient to safeguard against an erroneous deprivation that will practically never occur.
Moreover, even if there were some potential for erroneous deprivation, we cannot envision any set of additional procedures that would reduce that risk. A hearing, either before or after the time of booking, to determine whether any individual is subject to the booking fee would be largely meaningless — the hearing would establish that the arrestee was arrested and booked. And that fact, alone, subjects the arrestee to the fee. Thus, there would be practically no value in requiring any additional procedure.

3. Woodridge’s Governmental Interest

Woodridge has an interest in the specific $30 it took from Mr. Markadonatos, as that amount should offset at least a portion of the administrative costs associated with processing Mr. Markadonatos’ arrest. Beyond that specific interest, Woodridge also possesses a more general interest in the function involved in collecting $30 from individual arrestees like Mr. Markadonatos, insofar as it wishes to offset the myriad of costs associated with temporarily detaining all of Woodridge’s arrestees.
Finally, we must also note that Wood-ridge also has an interest in avoiding an additional hearing before or after taking the $30 booking fee. Such an additional administrative procedure would likely entail substantial costs, such as the salary costs of the person designated to preside over the hearing and arresting officers required to attend and testify.

L Balancing of the Mathews Factors

Balancing each of the above — described Mathews factors, we conclude that *991 the district court was correct to hold that Woodridge’s booking fee ordinance does not violate Mr. Markadonatos’ procedural due process rights.
Simply put, Woodridge’s general interest in covering booking costs of the ar-restees in its custody, and specifically in offsetting the costs of holding Mr. Mar-kadonatos temporarily, outweighs Mr. Markadonatos’ own interest in his money, especially when balanced with the exceedingly low likelihood that the fee would be imposed on him or other arrestees erroneously. There is some minimal amount of protection for ordinary citizens, insofar as they may argue to an arresting officer or later to a judge that the fee should not be charged against them or should be returned. That protection is more than sufficient to safeguard against the exceedingly low risk that a person who is not arrested will have the booking fee taken from him. This is fully consistent with the opinions of other circuits, which have determined that routine accounting and deduction of fees from detainees is not constitutionally problematic, due to the low amount of discretion and minimal risk of error. See, e.g., Sickles v. Campbell Cty., 501 F.3d 726, 730 (6th Cir. 2007); Slade v. Hampton Roads Reg’l Jail, 407 F.3d 243, 253-54 (4th Cir.2005); Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 422 (3d Cir.2000).
Finally, though this goes to the heart of Mr. Markadonatos’ substantive due process challenge, we must also note that, even if we were to determine that there was some potential for erroneous deprivation, due, for instance, to the risk of a false arrest, there are state remedies available to address such a wrong, under which arrestees would be entitled to the return of their booking fee. And, so long as there is such a meaningful post-deprivation remedy available, there is no violation of arrestees’ procedural due process rights. See, e.g., Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Doherty v. City of Chicago, 75 F.3d 318, 323 (7th Cir.1996).

C. Substantive Due Process

As we mentioned above when discussing standing, Mr. Markadonatos may challenge Woodridge’s booking fee on substantive due process grounds only to the extent it actually applied to him, as a for-cause custodial arrestee who was later adjudicated not guilty.
This is a steep hill to climb. Courts generally employ substantive due process to protect plaintiffs “only against arbitrary government action that ‘shocks the conscience.’ ” Montgomery, 410 F.3d at 939 (quoting Tun v. Whitticker, 398 F.3d 899, 902 (7th Cir.2005)). In fact, “[substantive due process depends on the existence of a fundamental liberty interest.” Idris v. Chicago, 552 F.3d 564, 566 (7th Cir.2009) (citing Washington v. Glucksberg, 521 U.S. 702, 719-22, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). In the absence of a fundamental right, we may only review the law to determine whether it is arbitrary, such that it would flunk the rational-basis test that applies to all legislation. Idris, 552 F.3d at 566 (citing National Paint & Coatings Ass’n v. Chicago, 45 F.3d 1124 (7th Cir.1995); Saukstelis v. Chicago, 932 F.2d 1171 (7th Cir.1991)).
Mr. Markadonatos’ complaint does not implicate a fundamental right. The $30 fee is extremely modest, and of an amount that does not rise to the level of a fundamental right. Id. (“The interest at stake is a $90 fine for a traffic infraction, and the Supreme Court has never held that a property interest so modest is a fundamental right.”). Accordingly, we do not believe that any fundamental right is implicated, here, and therefore we need *992 only ensure that Woodridge’s booking fee is rational and not arbitrary.
Woodridge’s booking fee clearly passes the rational basis test. In imposing the fee, Woodridge hopes to offset the cost of booking arrestees, or at the very least to collect revenue, either of which is a legitimate goal. Id. The collection of $30 from each for-cause arrestee is clearly rationally related to that goal, seeing as it takes money to cover the administrative costs of booking from the individuals whose actions caused the cost to begin with. Certainly, there are some inefficiencies in the system. But, an imprecise match between process and objective is permissible, even if greater precision is possible. See, e.g., Vance v. Bradley, 440 U.S. 93, 108-09, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); Heller v. Doe, 509 U.S. 312, 320-21, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); Pro-Eco, Inc. v. Bd. of Comm’rs of Jay Cty., 57 F.3d 505, 514 (7th Cir.1995). Therefore, we must conclude that Wood-ridge’s booking fee is rational, and is not in any way arbitrary.[4]
For these reasons, we must conclude that Woodridge’s booking fee does not violate Mr. Markadonatos’ right to substantive due process. The district court was correct to dismiss that portion of his claim, and we affirm in that regard.
III. Conclusion
For these reasons, we are obliged to conclude that Woodridge’s booking fee does not violate Mr. Markadonatos’ rights to procedural or substantive due process. The district court correctly dismissed this case, and accordingly we Affirm that decision.

. To the extent that we find an injury in fact, there can be no question that such injury is fairly traceable to Woodridge's action and would be redressed by a decision in Mr. Mar-kadonatos' favor.

. In other words, Mr. Markadonatos lacks standing to make a broader challenge against application of the fee to all arrestees who are eventually adjudicated not guilty. In particular, he lacks standing to assert a claim that application of the fee to those arrested without cause violates substantive due process.

. We must note, here, that Mr. Markadonatos seems to fundamentally misunderstand this portion of the analysis. He appears to argue that any collection of fees from a person who is ultimately adjudged “not guilty” is an erroneous deprivation. But that goes outside of the procedural due process analysis and into the substantive due process realm, by ignoring the text of the statute, which imposes the booking fee on any person who is arrested and booked, and delving into a prescriptive argument on what the statute should be.

. To the extent that Mr. Markadonatos may make an argument under the Equal Protection Clause (and then only to the extent that the argument is not waived, which is highly debatable), such an argument would nonetheless fail under the same rational basis analysis.