POSNER, Circuit Judge,
joined by Circuit Judges FLAUM and KANNE concurring in the judgment.
The plaintiff was arrested in the Village of Woodridge, Illinois, for shoplifting, an Illinois Class A misdemeanor. 720 ILCS 5/16-25. Upon arriving at the police station he was told that an administrative fee of $30.00 is required upon completion of any custodial arresf/booking procedure. He paid the $30 on the spot, posted bond, and-was forthwith released, without being jailed. He later pleaded guilty to the shoplifting charge and was ordered to undergo 12 months of court supervision and to pay fees and fines totaling $785 (on top of the $30 fee that he had paid at the police station). He claims to have completed his period of supervision successfully, and that as a result the shoplifting *546 charge was dismissed, “without adjudication of guilt,” pursuant to 730 ILCS 5/5 — 6— 3.1(f)- The defendant (the Village of Woodridge) denies that the plaintiff obtained such a dismissal, but since the complaint was dismissed on the pleadings, with no findings based on evidence, we’ll assume that the plaintiffs allegation is correct. Nothing turns on whether it is or is not correct, however, as we’ll see.
The suit (a class action suit, but dismissed by the district judge before he decided whether to certify a class) challenges the constitutionality of subsection 5-l-12(A) of section 5-1-12 (captioned “Administrative Fees”) of the Woodridge Village Code. The subsection imposes a “booking fee” of $30 “when posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant.” Presumably, “when posting” means “on a person who posts.” The subsection is poorly drafted; its poor drafting will figure in our analysis. Although the ordinance has been repealed and the repeal moots the plaintiffs request for declaratory and injunctive relief, it occurred after he paid his $30 and so does not nullify his claim for damages.
The plaintiff appealed and a panel of this court affirmed the dismissal of the suit by a split vote. 739 F.3d 984 (7th Cir.2014). Judge Stadtmueller of the Eastern District of Wisconsin, sitting by designation, wrote the majority opinion. Judge Sykes wrote a concurring opinion and Judge Hamilton a dissenting opinion. The plaintiff petitioned for rehearing en banc, and his petition was granted.
Judge Hamilton’s dissent assumed that the ordinance requires imposition of the $30 charge on anyone who’s arrested, whether or not he’s released from custody immediately either because he posts bail (that is, pays money out of his own pocket to be released) or posts a bond (borrows the required bail money). There are false arrests, how frequently or infrequently in Woodridge we have no idea, and to be forced to pay even a small amount of money for being falsely arrested may present serious constitutional issues. But the court doesn’t have to decide any of those issues — indeed, it should not reach them.
There is a critical difference between a fee for posting bail and a fee (if that’s the right word for it) for being arrested. To be released on bail, whether having been arrested falsely or not, is a benefit that the Village of Woodridge confers on the people whom its police officers arrest. Most people who are arrested do not want to spend any time in jail, and this is true whether or not there are solid grounds for the arrest, as there were in the case of our plaintiff. He preferred to pay the cost of a bail bond ($150, which was 10 percent of the amount of bail required for him to be released, because his arrest had been for a Class A misdemeanor; see 720 ILCS 5/16-25(a)(l), (f)(1); Ill. Sup.Ct. R. 528(c)).
The cost of the bond was borne by the court and so ultimately by the county or the state. (Illinois does not permit use of commercial bondsmen.) But the Village doubtless bore some expense as well, in making sure that the bond was proper and therefore that the plaintiff could and should be released pending trial. County sheriffs are authorized to charge a fee for bond services, see 55 ILCS 5/4-5001, and in fact DuPage County (in which Wood-ridge is located) after a cost study set its bond fee at $30. DuPage County Code § 20-130.
The County’s cost study found that the cost, per person arrested, to the Sheriffs Department of providing bond was $44.59. DuPage County Sheriff Cost of Service Analysis 1-2 (Aug. 9, 2002). On the basis of the study the County raised its fee for the service, which had been $25, to $30. It’s thus no surprise that Woodridge, when *547 an arrest is made by its officers rather than by the County Sheriffs police, charges the same fee. There is no contention that for the same service provided by the Village a fee of $30 is excessive; the County study suggests if anything that the fee doesn’t cover the Village’s costs. Anyway the constitutionality of a fee for a government service does not depend on proof of an exact equality between the cost of the service and the size of the fee. Massachusetts v. United States, 435 U.S. 444, 464-67, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978); Mueller v. Raemisch, 740 F.3d 1128, 1134 (7th Cir.2014); Oneida Tribe of Indians of Wisconsin v. Village of Hobart, 732 F.3d 837, 841-42 (7th Cir.2013); Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc., 651 F.3d 722, 728-29 (7th Cir.2011) (en banc); Broussard v. Parish of Orleans, 318 F.3d 644, 660 (5th Cir.2003) (“even though the connection between the bail fees charged and the administration of the bail-bond system may be somewhat tenuous, ... arrestees have failed to present evidence sufficient to show that the fees imposed are arbitrary”); compare State v. Gorman, 40 Minn. 232, 41 N.W. 948, 949 (1889).
If, then, Woodridge’s ordinance imposes the $30 charge only when the person arrested “post[s] bail or bond,” the charge is a lawful fee for a government service and the plaintiffs case collapses. Schilb v. Kuebel, 404 U.S. 357, 370-71, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971), states that “ § 110-7 [of Article 110 of the Illinois Code of Criminal Procedure of 1963] authorizes retention of the 1% as ‘bail bond costs.’ This is what that description implies, namely, an administrative cost imposed upon all those, guilty and innocent alike, who seek the benefit of § 110-7. This conclusion is supported by the presence of the long-established Illinois rule against the imposition of costs of prosecution upon an acquitted or discharged criminal defendant, and by the Illinois court’s own determination that the charge under § 110 — 7(f) is an administrative fee and not a cost of prosecution imposed under [Illinois law] only upon the convicted defendant” (citations omitted). And in Payton v. County of Carroll, 473 F.3d 845, 852 (7th Cir.2007), we read that “the sheriffs have a legitimate interest in recouping some of the costs of administering the bail system. If they had to offer another separate set of hearings devoted only to these small administrative fees, they might opt out of the bail bond process altogether — a step that Illinois would permit them to take. Every detainee would then need to wait for the office hours of the county clerk, rather than the subset of detainees who now elect that option. We conclude that plaintiffs have not stated a claim for a deprivation of due process.”
The Supreme Court held many years ago, in Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), that the right to travel abroad is a “liberty” protected by the Constitution’s due process clauses. Nevertheless you must pay for a passport to be allowed to travel abroad. Similarly, you have a right not to be arrested if there is no probable cause to arrest you; but if you have the misfortune to be wrongfully arrested (though the arrest of the plaintiff in this case was not wrongful), you still must post bail if you want to avoid being jailed pending a judicial determination whether there was probable cause to arrest you. The right to bail, like the right to travel abroad, is a valuable right for which the person seeking it, whether guilty or innocent, must pay. That is what Schilb and Payton hold. The $30 fee is a part of that cost — a small part.
The plaintiffs counsel tells us that the $30 “booking fee” provision is unique among the provisions of the ordinance because it alone imposes a fee for what may *548 be innocent conduct mistakenly believed by police to be illegal. He instances the $15 fee for “release of [an] impounded dog or cat.” But of course a dog or cat may escape the owner’s control, and later be impounded, without fault on the owner’s part. The animal may have been stolen, or have escaped from its home because a careless workman had left a door or window ajar, or been lured from its litter box by a rogue Woodridge police officer with catnip. Even in such cases, impounding the animal confers a benefit on the owner for which he must pay despite his lack of fault. Or consider the Village’s $250 “towing fee”: the owner must pay to recover his car even if he believes with good reason that the car was towed in error from a legal parking spot. It is the same in the false-arrest case if the arrested person wants to be bailed out.
This discussion leads to the critical issue presented by the appeal: the scope of the “booking fee” provision. It is unclear. The parties interpret it to mean that if either you are arrested, or you post bail or bond in respect of some other form of “legal process,” you must pay the $30. But there is another plausible interpretation. Remember what it says: “when posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant,” you must pay the charge. This can be read to mean that you must pay only when posting bail or bond in connection with any legal process, including a custodial arrest pursuant to a warrant. The “custodial arrest” clause is, on this interpretation, redundant (for custodial arrest is a form of legal process), but redundancy is common in statutes, and probably more so in village ordinances; a village may not have the resources for assuring highly professional legal draftsmanship.
If we accept the plaintiffs interpretation we create a serious constitutional issue— whether government may charge a person a “fee” (the plaintiff admits that the $30 charge is a fee rather than a fine) merely for being arrested, even if, as things turn out, he has been falsely arrested. As is apparent from Judge Hamilton’s panel dissent, adopting the plaintiffs interpretation of the ordinance would plunge the court into a swamp of issues involving both procedural and substantive due process, and maybe equal protection as well. We are adjured by countless Supreme Court decisions to avoid statutory interpretations that raise serious constitutional issues, and not just interpretations that if adopted would render a statute unconstitutional without further analysis. In the words of Justice Holmes, “the rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act. Even to avoid a serious doubt the rule is the same.” Blodgett v. Holden, 275 U.S. 142, 148, 48 S.Ct. 105, 72 L.Ed. 206 (1927) (concurring opinion) (emphasis added); see also Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347-48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); Rust v. Sullivan, 500 U.S. 173, 190-91, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991); Matthew C. Stephenson, “The Price of Public Action: Constitutional Doctrine and the Judicial Manipulation of Legislative Enactment Costs,” 118 Yale L.J. 2, 36-39 (2008). This corollary of the “constitutional avoidance” doctrine — a doctrine that in its original form required “that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality,” Hooper v. California, 155 U.S. 648, 657, 15 S.Ct. 207, 39 L.Ed. 297 (1895) (emphasis added); see also Parsons v. Bedford, 28 (3 Pet.) U.S. 433, 448-49, 7 L.Ed. 732 (1830) (Story, J.) — has been criticized. See Hen *549 ry J. Friendly, Benchmarks 211-12 (1967); Frederick Schauer, “Ashwander Revisited,” 1995 Sup.Ct. Rev. 71, 74. But it endures, and binds us.
There are limits to interpretive freedom, and thus to the reach of the constitutional avoidance doctrine. The interpretation that avoids having to grapple with difficult constitutional issues must be reasonable to be a serious candidate for adoption. But those limits are not exceeded by an interpretation that confines the $30 booking fee to cases in which a person arrested in Woodridge seeks bail or bond. It’s like interpreting the phrase “my cat enjoys jumping on trampolines and beds” to mean that she enjoys jumping on both things, as opposed to her enjoying jumping only on trampolines and, separately, enjoys beds for reasons unrelated to jumping on them. The latter interpretation, which corresponds to the interpretation urged by the plaintiff in this case, is actually less plausible than the former interpretation, the one that spares us from having to resolve serious constitutional issues. The plaintiffs lawyer emphasizes that the ordinance makes no provision for refunds, but there is no reason for a refund when a valuable service, such as assisting in obtaining bail, is rendered.
Granted, the title of the provision— “booking fee” — points to an arrest; the arrested person is booked even if he does not post bail or bond. But a glance at the other provisions of the ordinance reveals carelessness in titling. For example, the provision imposing a “towing fee” is not imposed every time a vehicle is towed by the Village, even if the vehicle was towed because its driver or owner was arrested; it is imposed only “on an arrestee any time a vehicle release form is required.” The opening sentence of the ordinance states that it imposes “fees for the following activities and purposes,” and the activity for which the booking fee is imposed is “posting bail or bond on any legal process,” including the legal process that consists of a custodial arrest pursuant to a warrant.
Another support for this analysis is the earlier reference to the $30 service fee charged by DuPage County for arranging bail for an arrested person. There is no suggestion that the County’s fee is for the “service” of arresting. The fact that the Village of Woodridge charges the identical fee is evidence that like the County’s fee it’s a fee for arranging for a bail bond— which is not to say the Woodridge police may not be treating it as a fee for arrest, but that is a separate issue, taken up later.
The suggested interpretation does less violence to the provision’s “plain meaning” than the Supreme Court’s interpretation of a statute which provided that “the Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States.” 50 U.S.C. § 403(c) (1982) (now codified at 50 U.S.C. § 3036(e)(1)). Although the Administrative Procedure Act bars judicial review of “agency action [that] is committed to agency discretion by law,” 5 U.S.C. § 701(a)(2), the Supreme Court held that termination of employment by the Director of Central Intelligence could be challenged if the challenge was based on the Constitution. This interpretation was inconsistent with the text of the employment statute read in conjunction with the APA, but the Court adopted it “to avoid the ‘serious constitutional question’ that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.” Webster v. Doe, 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (emphasis added). For a similar case and result, see Johnson v. Robison, 415 U.S. 361, 365-67, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).
*550 Granted, the Village does not invoke the doctrine of constitutional avoidance. It comes close, however, when it says in its brief on rehearing that “the ‘Arrest Booking Guidelines’ promulgated by the Du-Page County Court provides that for misdemeanor arrests the arrestee can and should ‘be released on bond at the police station.’ ” In other words, the Village ties the fee to the bond. The arrested person pays $30 and gets bond. AJ1 the Village had to say in addition, to invoke the doctrine clearly, would have been that the fee is for the bond. In any event the purpose of the constitutional avoidance doctrine is not to benefit a party, but to minimize the occasions on which a court declares a legislative enactment unconstitutional. That declaration would be gratuitous in this case because the plaintiff suffered no harm from the alleged constitutional violation. He paid what in his county is the standard bond fee charged by local government and got the bond and spent no time in jail. What’s he complaining about?
Of course in a sense it’s too late to save the ordinance by invoking the doctrine of constitutional avoidance; it’s been repealed. But for all we know, there are similar ordinances elsewhere. Remember that DuPage County charges a $30 bond fee, and (in the same section of its ordinance) it makes the fee nonrefundable — so if the plaintiff had been charged that fee and had later been acquitted, he would have had no right to get it back. Isn’t it important to make clear that a bond fee is not an arrest fee?
There is a further reason not to limit the constitutional avoidance doctrine to enactments still in force. The only reason the plaintiff isn’t asking for an injunction is that the Village repealed the ordinance, thus rendering that relief (which the plaintiff had originally requested) moot. To preclude application of the constitutional avoidance doctrine whenever it was sought to be applied to a repealed statute or ordinance would disincentivize states and municipalities from repealing their enactments lest repeal lead to an inference that the previous legislation had been unconstitutional. We avoid creating such incentives in other settings. Fed.R.Evid. 407 (prior remedial measures), for example, forbids admitting evidence of a company’s redesigning a product to prove that the previous design was defective. It would be perverse to rule that had Woodridge not repealed the ordinance, the constitutional avoidance principle might save it, but because it has been repealed the Village should be liable for past damages.
As noted earlier, the doctrine of constitutional avoidance functions to minimize friction between courts and legislatures (including state and municipal legislatures). The plaintiff asks us to hold that a local government of Illinois is committing grave violations of his constitutional rights — rights that might conceivably (if implausibly) be traced all the way back to Magna Carta. That imputation should not lightly be leveled against a state government entity, even as modest a one as the Village of Woodridge, Illinois. A saving construction is available to our court; we should embrace it.
No court other than this court in this case has interpreted Woodridge’s “booking fee” provision. The meaning of the provision is of course an issue of Illinois law. But whether we could certify the question of its meaning to the Supreme Court of Illinois — a course, by the way, that neither party urges — and if we could whether we should, are very doubtful. Begin with “could.” The Illinois court accepts only “Certification of Questions of State Law from Certain Federal Courts,” Ill. Sup.Ct. R. 20-and “state law” may not include local ordinances. Our authority to certify questions to the Supreme Court of Illinois *551 is similarly limited to “questions of state law.” 7th Cir. R. 52. True, the meaning of local ordinances was at issue in City of Chicago v. StubHub!, Inc., 624 F.3d 363 (7th Cir.2010), where we certified a question to that court. The court accepted the certification, but the question certified, and answered by the court, was “whether municipalities may require electronic intermediaries to collect and remit amusement taxes on resold tickets” — that is, whether this practice was permitted by Illinois state law.
Whether we could certify to the Supreme Court of Illinois a question about the meaning of a local ordinance, or not, we shouldn’t do so in this case. The case doesn’t meet our standards for certification, as laid out in State Farm Mutual Automobile Ins. Co. v. Pate, 275 F.3d 666, 672 (7th Cir.2001), where we said that “ ‘certification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue.’ We also consider whether the issue is of interest to the state supreme court in its development of state law, and the interest of future litigants in the clarification of state law” (internal citations omitted). The fact that Woodridge’s ordinance has been repealed (along with a similar ordinance of another Illinois municipality, Naperville, see Roehl v. City of Naperville, 857 F.Supp.2d 707, 709-10 (N.D.Ill.2012)) is decisive against certification.
In these circumstances, given the decisions of the Supreme Court of the United States that we’ve cited, our proper course is clear: it is to interpret the “booking fee” provision of the ordinance as being limited to bail and bond cases.
This is not to condone — indeed it is to raise serious questions concerning — the conduct of the Woodridge police. If they were charging the $30 fee to persons whom they arrested who did not attempt to post bail or bond (maybe persons who couldn’t or wouldn’t spare the money, or were confident of being quickly released from jail because their arrest had been a palpable mistake), those persons might well have state or federal remedies, or both. Being arrested is not a “service” to the person arrested! But the plaintiff in this ease did not want to risk time in jail. He posted bond and was released. He paid for and received a valuable service. No constitutional right of his was violated.
It could be argued that even if the ordinance does not allow the imposition of an arrest fee, as distinct from a fee for a get-out-of-jail-card, a person who can prove that the Village of Woodridge has or had a policy of charging the fee to anyone who is arrested is entitled to damages from the Village. But Markadonatos is challenging the ordinance, not a policy that exists apart from it; for he is suing exclusively as a member of the class of persons to whom the ordinance has been applied, and the ordinance is constitutional if it authorizes a fee only for posting bond. Furthermore, even if the Village, or the police, have and enforce an unlawful policy of imposing the fee on every arrested person, bond or no bond, Markadonatos was not a victim of such a policy. He committed theft yet avoided for $30 (plus the $150 cost of the bond, as distinct from the Village’s help in getting him the bond) having to spend any time in jail. He got a reasonable deal. If the Village or the police have acted unlawfully toward other persons, they are the persons who have standing to sue.
Giving the ordinance an interpretation that renders it constitutional leaves no basis for the suit; and, incidentally, by re *552 moving the constitutional obstacle leaves the state judiciary free to interpret the ordinance in any future lawsuit. We have no authority to give a state statute or local ordinance a definitive interpretation; that is the prerogative of the state judiciary. But when a case properly before us presents an issue of interpretation of state law, whether it is case law or legislative law, our duty is to foresee as best we can the interpretation that the state courts would adopt. The Illinois courts would doubtless prefer to interpret the pertinent provision of the ordinance to preserve its constitutionality rather than to adopt an interpretation that might render it unconstitutional. But we preserve the state judiciary’s opportunity to give or not give the ordinance a saving construction, as it wishes.
The case was properly dismissed on the pleadings, because the ground for the dismissal was the answer to a question of law, namely the meaning of the relevant provision of the ordinance. A suit premised on the distinct theory that the Woodridge police commit a constitutional violation when they collect a fee (unlawfully, because not authorized by the ordinance as we interpret it) for an arrest that does not result in the posting of bail or bond might succeed, but, as we have emphasized, it is not this case. Whatever the situation of other arrested persons, Markadonatos Mmseif received a reasonable fee for a valuable service. What is his gripe? What damages has he suffered? What possible relief could a court grant him?
A note in closing about the alternative ground for dismissal urged in Judge Sykes’s concurring panel opinion: lack of standing because of absence of an injury remediable by the court. Article III of the Constitution of course makes standing a prerequisite to maintaining a suit in a federal court. Judge Sykes pointed out that if the objection to the ordinance was, as it seemed to be, that it imposed a fee for being arrested with or without probable cause, the plaintiff could not make the objection a basis for a suit in federal court, because he was arrested with probable cause. There was an echo of Judge Sykes’s concern in Judge Hamilton’s panel dissent when he said that the constitutional flaw that he discerned in the ordinance was “easy to correct: make the fee payable upon conviction of a crime, as part of the court costs authorized by law after the full procedural protections of the criminal justice system.” 739 F.3d at 993.
The plaintiff received those full procedural protections but only after paying the fee. Yet what difference would it have made to him had he paid it after rather than before receiving them? He was arrested on January 8, 2011, and discharged from supervision on April 19, 2012. By then and probably earlier he would have, under Judge Hamilton’s conception of lawful procedure, been lawfully required to pay the $30 fee. Suppose he had instead paid it on January 8, 2012. Then, at a generous discount rate of 10 percent per annum, he incurred a present-value loss of $2.73 ($30.00 — $27.27) by having to pay in advance. De minimis non curat lex.
Judge Sykes’s approach, at least if the $2.73 loss of present value is disregarded, would resolve the case on grounds of standing, requiring dismissal without prejudice. The slightly different approach taken in this opinion implies dismissal on the merits (as in the district court): the ordinance is constitutional, and, because the plaintiff posted bond and thus came within the ordinance so interpreted, was not violated and no constitutional right of the plaintiff was infringed.