SYKES, Circuit Judge,
dissenting.
The ground has shifted under this case since we granted rehearing en banc.
• Three members of the court now propose to affirm by invoking the doctrine of constitutional avoidance, an option not raised by the parties. See ante, at 548-52 (Posner, J., concurring in the judgment).
• Four members of the court would reverse and remand on the merits, though on a different analysis than originally argued by the plaintiff or adopted by the panel dissent. Compare post, at 566-68 (Hamilton, J., dissenting), with Markadonatos v. Vil *556 lage of Woodridge, 739 F.3d 984, 994-1000 (7th Cir.2014) (Hamilton, J., dissenting), and Appellant’s Br. at 9-28, 33-40, ECF No. 22 (panel brief).
• For my part, en banc review has reinforced my earlier doubts about the plaintiffs standing. I would vacate and remand with instructions to dismiss for lack of jurisdiction.
• Judges Easterbrook and Tinder substantially agree with me that the plaintiff lacks standing, although they conclude that a narrow aspect of the case is justiciable. See ante, at 552-53 (Easterbrook, J., concurring in the judgment). But they also disagree with Judge Posner’s use of the constitutional-avoidance doctrine and instead would hold that the justiciable remainder is not viable as a due-process claim, as the plaintiff has argued it, but only as an equal-protection claim, which fails on the merits. See id. at 553-55.
In short, the en banc court cannot agree on what questions the case raises, whether the plaintiff is the right person to raise them, whether they have been properly preserved, or what doctrinal framework applies. Our fractured nondecision suggests that this case was a poor vehicle for resolving the constitutionality of a jail booking fee.[1]
* # *
As the case was originally presented to the panel, the plaintiff raised a vaguely conceptualized due-process challenge to Woodridge’s booking fee — a $30 fee the Village collects from everyone who is arrested and booked at its jail. Never mind the hazy briefing, just describing this fee is enough to trigger alarm and indignation. Can a municipality really charge a fee simply for being arrested and booked at its jail? Really?
Maybe not, but the panel majority concluded that the plaintiff lacks standing on the key “substantive” aspect of his due-process claim — his argument that it’s irrational to impose the fee on those who are wrongly arrested — because he was lawfully arrested on probable cause. See Markadonatos, 739 F.3d at 988-89 (majority op.); id. at 992-93 (Sykes, J., concurring). That remains my view. And I’m now convinced that the plaintiff lacks standing on the “procedural” aspect of his claim as well.
The booking fee is listed in the Wood-ridge Village Code as a line item in an otherwise unremarkable schedule of administrative fees. In its entirety, the ordinance reads as follows:
Booking fee: When posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant. $30.00
*557 WoodRidge, Ill., Code § 5-1-12A (2013), repealed by Ordinance of Mar. 13, 2014, Ord. No.2014-11. The terse language is not unusual given its placement in a schedule of administrative fees promulgated by a small municipality.
Jerry Markadonatos was arrested for shoplifting and taken to the Woodridge jail. During the booking process, he was given written notice of the $30 booking fee, and he paid it immediately, before bonding out of jail. He was thereafter charged in DuPage County Circuit Court with retail theft, a state misdemeanor offense. He pleaded guilty as charged, was found guilty, and was sentenced to a 12-month term of supervision and ordered to pay various court costs and criminal justice fees.
As Judge Posner notes, the parties dispute the legal significance of the term of supervision, which apparently was imposed under a pretrial diversionary program that permits the court to dismiss the case upon the defendant’s successful completion of supervision. See 730 III. Comp. Stats. 5/5-6 — 1(c), 5/5-6-3.1(e), 5/5-6-3.1(f). The dispute is immaterial. What matters here is that Markadonatos was arrested on probable cause, was charged with retail theft, pleaded guilty, and served a term of supervision for that crime. Everyone agrees on these facts.
While he was still on court supervision, Markadonatos sued the Village under 42 U.S.C. § 1983, accusing it of violating his right to procedural and substantive due process by collecting the booking fee without a hearing at which he could contest it. He sought the full range of remedies for the claimed constitutional violation: a declaration that the booking-fee ordinance is unconstitutional, an injunction enjoining Woodridge from enforcing it, and damages. He brought the suit on behalf of himself and a class of “[a]ll individuals who were deprived of their property pursuant to Woodridge Municipal Ordinance 5-1-12(A) without being provided the constitutionally guaranteed due process of law.” The district court dismissed the case on the pleadings.
In his initial brief on appeal, Markado-natos conflated the procedural and substantive aspects of his due-process claim. He argued that the fee is procedurally unconstitutional because the Village collects it during the booking process without a predeprivation hearing to test the validity of the arrest or at least a postdeprivation process by which those who are wrongfully arrested, never charged, or are found not guilty may obtain a refund. This way of framing the procedural challenge requires a prior conclusion about the substance of the ordinance. By its terms, the ordinance does not make the fee contingent on a valid arrest or successful prosecution. To resolve the argument about inadequate process, the court would first have to conclude that the booking fee is substantively unconstitutional as applied to people who are wrongfully arrested, never charged, or are found not guilty. But Markadonatos isn’t in any of those groups. He concedes that he was lawfully arrested on probable cause, was in fact charged with retail theft, and pleaded guilty as charged.
So the panel majority concluded that Markadonatos lacked standing to challenge the fee as a violation of substantive due process and proceeded to analyze the procedural due-process claim without the embedded substantive premise, rejecting it under the balancing test of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). See Markadonatos, 739 F.3d at 988-91; id. at 992-93 (Sykes, J., concurring). Judge Hamilton dissented, construing the booking fee as “in substance a criminal fine,” id. at 993 (Hamilton, J., dissenting), which of course cannot *558 be imposed without an adjudication of guilt, id. at 994-99.
Markadonatos then obtained new counsel and sought rehearing en banc. The court granted rehearing and ordered the parties to submit new briefs on (among other things) the question of standing and the fee/fine distinction raised in Judge Hamilton’s dissent. In this new round of briefing, Woodridge pressed harder on the standing problem, and the parties agreed that the booking fee is indeed a fee, not a fine.
Meanwhile, the Village quietly repealed the booking fee. No one bothered to tell the court about this important development, perhaps because the claim for damages remains. But the repeal moots the claim for injunctive relief.
Now, in yet another twist, three members of the court propose to resolve the sole remaining live claim on a new ground never raised by the parties. Invoking the doctrine of constitutional avoidance, my colleagues interpret the ordinance as a fee for bonding out of jail. See ante, at 548-52 (Posner, J., concurring in the judgment). Having thus “saved” the (now repealed) ordinance via a narrowing construction, they conclude that the Village committed no constitutional violation (because Marka-donatos bonded out of jail) and therefore reject the claim on the merits. Id. at 552.
I certainly agree that the ordinance is not clearly drafted. And the proposed limiting construction may be a reasonable one. But throughout this litigation, the parties have agreed that Woodridge imposes the fee on all persons arrested and booked at its jail, regardless of whether they remain in custody, post bail, or bond out. Granted, there is some authority for invoking the doctrine of constitutional avoidance sua sponte. See, e.g., Escambia County v. McMillan, 466 U.S. 48, 51-52, 104 S.Ct. 1577, 80 L.Ed.2d 36 (1984); Edward J. DeBartolo Corp. v. NLRB, 463 U.S. 147, 158, 103 S.Ct. 2926, 77 L.Ed.2d 535 (1983); Youakim v. Miller, 425 U.S. 231, 234-36, 96 S.Ct. 1399, 47 L.Ed.2d 701 (1976); see also Adrian Vermeule, Saving Constructions, 15 GEO. L.J.1945, 1948-49 (1997) (discussing procedural avoidance and collecting cases). But that approach is not open to us here for the reasons Judge Hamilton explains at length in his dissent, see post, at 565-66 (Hamilton, J., dissenting), and Judge Easterbrook also mentions in his concurrence, see ante, at 552-53 (Easterbrook, J., concurring in the judgment). I agree with them on this point and have nothing to add.
It’s worth reiterating, however, that the claim for injunctive relief is moot. A “saving” construction is a remedial device to avoid striking a statute as unconstitutional, but here the challenged ordinance is no longer on the books. A limiting construction can’t be applied retrospectively and used as a basis to reject a claim for damages — at least not where, as here, the parties agree that the statute was uniformly interpreted and applied more broadly.
On closer review I’ve concluded that Markadonatos lacks standing on both the substantive and procedural aspects of his due-process claim. This is, of course, a jurisdictional inquiry that must precede consideration of the merits. See Daimler-Chrysler Corp. v. Cuno, 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); see also U.S. Const, art. III, § 1.
The familiar requirements of Article III standing are these: (1) the plaintiff must have suffered a concrete “injury in fact”; (2) the injury must be fairly traceable to the defendant’s allegedly unlawful conduct; and (3) “it must be likely, as opposed to merely speculative, that the injury will be *559 redressed by a favorable decision.” Lu-jan, 504 U.S. at 560-61, 112 S.Ct. 2130 (internal quotation marks omitted).
There’s no doubt that the first requirement is satisfied here. Markadonatos paid the $30 booking fee. The problem arises at step two of the standing inquiry. As Markadonatos has framed his constitutional claim — in both its procedural and substantive aspects — his injury is not fairly traceable to the Village’s allegedly unconstitutional conduct.
Although his arguments have evolved during the course of this appeal, at this point Markadonatos offers three basic reasons why the booking-fee ordinance is unconstitutional: (1) the fee is collected without a predeprivation hearing or a postdeprivation process to obtain a refund; (2) the fee is arbitrary and irrational as applied to those who are unlawfully arrested;[2] and (3) the fee is arbitrary and irrational as applied to those who are never charged or are found not guilty.[3] The first is an argument about procedure; the other two address the substantive terms of the ordinance.
Because Markadonatos concedes probable cause to arrest and in fact admitted his guilt in court, he can’t press an argument that the fee is irrational as applied to innocent or wrongfully arrested people. See Sickles v. Campbell County, 501 F.3d 726, 732 (6th Cir.2007) (holding that plaintiffs who pleaded guilty lack standing to challenge the county’s collection of jail costs as applied to those who are “arrested, booked and immediately released because of mistake”) (internal quotation marks omitted); ante, at 552-53 (Easter-brook, J., concurring in judgment). So the substantive component of the due-process claim drops out of the case because the plaintiff lacks standing to challenge the fee on this basis.
The remaining argument about defective process also relies on a claim about substantive flaws in the ordinance, which affects the analysis of the plaintiffs standing to challenge the fee on procedural due-process grounds. As I’ve explained, Mar-kadonatos’s claim about deprivation of process rests on a premise that the fee cannot be imposed without a predeprivation hearing to test the validity of the arrest, or alternatively, that the Village must at least provide some postdeprivation procedure so that those who are wrongfully arrested, never charged, or found not guilty may obtain a refund. Again, this argument ties the procedural due-process claim to a conclusion about the substantive constitutionality of the ordinance. Restated, the argument is essentially this: Because the fee is not rational as applied to those who are wrongfully arrested, never charged, or found not guilty, a hearing is necessary to prevent its erroneous application to people in these groups.
But Markadonatos doesn’t challenge the validity of his arrest and has admitted his guilt in court. That is, he does not contest any facts that would be relevant to the hearing that he claims the Constitution requires. As such, he has suffered no harm that is fairly traceable to the alleged deprivation of process about which he complains.
The standing problem in this case straddles Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), and Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), two cases that were *560 decided a year apart but seem to point in opposite directions. In Codd the Supreme Court held that a person cannot make a procedural due-process claim when he does not assert that a factual dispute exists for a due-process hearing to resolve. The case involved a police officer who lost his job during the probationary phase of his employment. 429 U.S. at 624-25, 97 S.Ct. 882. His personnel file contained a report that he had attempted suicide, which he claimed hurt his job prospects at other law-enforcement agencies. Id. at 626, 97 S.Ct. 882. Although as a probationary employee he did not have a property interest in his job, he claimed that the stigmatizing nature of the report about his suicide attempt entitled him to a hearing. Id. The Court granted certiorari to determine whether the case came within the doctrine established in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).
In the end, however, the Court found it unnecessary to decide this question because the officer had not asserted that the report of his suicide attempt was false. Codd, 429 U.S. at 627, 97 S.Ct. 882. The Court held that “if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee’s reputation.” Id. The officer had claimed a right to a hearing to “clear his name.” Id. The Court concluded that because “he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him.” Id. at 627-28, 97 S.Ct. 882.
In Carey, decided the following year, the Supreme Court held that a violation of procedural due process is actionable without proof of actual damages. 435 U.S. at 266-67, 98 S.Ct. 1042. Elementary and secondary school students sought damages for deprivation of their due-process rights after they were suspended without a hearing for violating school rules. The Court held that the students were not required to prove actual damages: “Even if [the] suspensions were justified, and even if they did not suffer any actual injury, the fact, remains that they were deprived of their right to procedural due process.” Id. at 266, 98 S.Ct. 1042. The Court remanded the ease with specific instructions to the district court: If the court concluded that the suspensions were valid under school rules, the claim for compensatory damages would fail, but the students were nonetheless entitled to “nominal damages not to exceed one dollar” for the deprivation of process. Id. at 267, 98 S.Ct. 1042.
The results in Codd and Carey seem contradictory, but the Tenth Circuit persuasively explained the difference between the two cases in Rector v. City & County of Denver, 348 F.3d 935, 944 (10th Cir.2003). Rector involved a challenge to the parking-enforcement regime in the City of Denver. The City’s standard parking ticket form notified the recipient that the parking fine must be paid or contested within 20 days and also warned that if payment was not received within that 20-day period, certain late fees automatically applied. Id. at 937-38. The plaintiffs— two people who were ticketed for parking violations and paid the fines — sued the City claiming that the late-fee notice was misleading because in actuality, “as long as the recipient appears before the parking referee within twenty days, the late fee is not imposed.” Id. at 942. They complained that the “categorical” language on the face of the ticket “pressures recipients to pay rather than challenge the ticket” and thus violates due process because it “restricts a putative violator’s opportunity *561 to be heard and to present objections.” Id.
But the plaintiffs in Rector did not assert any basis on which they would have contested their tickets. This cast significant doubt on their standing to sue for interference with their procedural rights. Reconciling Codd and Carey, the court extrapolated an important standing principle in procedural due-process cases:
The distinction between Codd and Carey lies in adopting an ex ante perspective on the right to due process hearings. The Carey plaintiffs denied the substance of the underlying allegations made against them. Their injury, viewed ex ante, is that they were denied the opportunity to convince school administrators that they should not be suspended. Thus while ex post, their loss on the merits precluded any claim for compensatory damages, the denial of the opportunity to sway school officials toward their cause constituted an injury in fact. By contrast, the plaintiff in Codd did not challenge the substantial truth of the damaging material set forth in his file. Even by his own reckoning of the facts, the hearing would not have vindicated any rights.
Rector, 348 F.3d at 944 (internal citations omitted).
The Rector plaintiffs were more like the police officer in Codd than the students in Carey. They did not assert any grounds on which they would have contested their parking tickets. So the Tenth Circuit concluded that they lacked standing to claim a violation of their hearing rights. Their injuries — payment of the parking fines— were not fairly traceable to the alleged defect in the notice; their hearing rights were unaffected “because there was nothing for a hearing to decide.” Id. at 945.
As Rector explains, under Carey a person claiming a violation of procedural rights may have an injury in fact regardless of whether he would have prevailed at the hearing that is the subject of his claim. “Parties may suffer injury in fact from defective procedures even if, at the end of the day, they would not have prevailed on the merits.” Id. at 943; see also Buckley v. Fitzsimmons, 20 F.3d 789, 796 (7th Cir.1994) (noting that a “denial of procedural rights is a form of injury”). But the standing inquiry does not end with a finding of injury in fact. Codd shows that in a due-process case, the plaintiff must also allege that he would have challenged something at the hearing that he contends is constitutionally required. See Rector, 348 F.3d at 944 (citing Michael H. v. Gerald D., 491 U.S. 110, 127 n. 5, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (plurality opinion) (“We cannot grasp the concept of a ‘right to a hearing’ on the part of a person who claims no substantive entitlement that the hearing will assertedly vindicate.”)). Otherwise his injury is not “fairly traceable” to the alleged deprivation of process.
Here, Markadonatos does not wish to contest any facts that would be relevant to the hearing he claims is constitutionally required; he concedes that he was lawfully arrested for retail theft and admitted his guilt in court. Accordingly, his injury is not fairly traceable to the alleged constitutional violation on which his claim rests.
Judge Posner does not directly address the plaintiffs standing, but the issue can’t be skipped over or summarily brushed aside. See DaimlerChrysler Corp., 547 U.S. at 341, 126 S.Ct. 1854 (“If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so.”).
In his concurrence Judge Easterbrook writes that Markadonatos has standing to raise a substantive challenge to the ordinance, but only to the extent that he “maintains ... that the fee is constitution *562 ally obnoxious even when the arrest is supported by probable cause and followed by a conviction.” See ante, at 553 (Easter-brook, J., concurring in the judgment). But Markadonatos hasn’t advanced a claim that municipalities are constitutionally forbidden to assess a booking fee on people in this category. He has never argued that booking fees are arbitrary and irrational in all circumstances, quite apart from the processes used to collect them. Rather, the “substantive” dimension of his due-process claim has always been that the fee cannot rationally be applied to persons who are wrongfully arrested or innocent.[4] Indeed, he expressly accepts that it’s rational to impose a booking fee on those who are found guilty.[5]
This brings me to a final point about Judge Hamilton’s analysis of standing, which suggests that Markadonatos and everyone else who paid the booking fee may challenge it simply by virtue of having paid it — in other words, that the payor’s personal circumstances just do not matter. That’s true in general for facial constitutional challenges. See Ezell v. City of Chicago, 651 F.3d 684, 697 (7th Cir.2011) (“In a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiffs personal situation becomes irrelevant.”). And it’s also true that Markadonatos asserts that he is mounting a facial challenge to the fee. But he never actually does so. As I’ve explained, both dimensions of his due-process claim rest on the substantive premise that the fee is irrational as applied to those who are wrongfully arrested or innocent.
To repeat, Markadonatos does not argue that the substantive component of the Due Process Clause prohibits Woodridge from requiring lawfully arrested and actually guilty persons to pay a booking fee. He argues only that substantive due process prohibits the Village from requiring an unlawfully arrested or actually innocent person to pay a booking fee. And his claim about defective process posits that a hearing is constitutionally required to ensure that the payor has at least been lawfully arrested (because it’s irrational to require an unlawfully arrested or innocent person to pay). These arguments are contingent, not categorical, and as such they require a plaintiff with the relevant characteristics to connect the injury in fact— here, payment of the fee — to the alleged constitutional wrong. That’s what the traceability element in standing doctrine insists upon.
Because Markadonatos lacks standing to bring the claims he has actually raised, I would vacate and remand with instructions to dismiss the case for lack of jurisdiction.

. Our per curiam affirmance is a nonprece-dential default disposition necessitated by our inability to muster a majority for a judgment, akin to an affirmance by an equally divided court. See, e.g., Warner-Lambert Co. v. Kent, 552 U.S. 440, 128 S.Ct. 1168, 170 L.Ed.2d 51 (2008); see also Neil v. Biggers, 409 U.S. 188, 191-92, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (explaining that an equally divided court leaves the lower court's judgment in force because "it is the appellant or petitioner who asks the Court to overturn a lower court's decree,”); see also id. at 192, 93 S.Ct. 375 (explaining that an affirmance by an equally divided court has no precedential effect); Durant v. Essex Co., 74 U.S. (7 Wall.) 107, 112, 19 L.Ed. 154 (1868) ("If the judges are divided, the reversal cannot be had, for no order can be made. The judgment of the court below, therefore, stands in full force. It is, indeed, the settled practice in such case to enter a judgment of affirmance; but this is only the most convenient mode of expressing the fact that the cause is finally disposed of in conformity with the action of the court below, and that that court can proceed to enforce its judgment. The legal effect would be the same if the appeal, or writ of error, were dismissed.”).

. See Appellant’s Br. at 30, ECF No. 62 (“Woodridge’s scheme is ‘irrational’ and ‘arbitrary’ because it forces people who are illegally arrested to subsidize the illegal deprivation of their liberty.").

. See id. at 31 ("[T]he only reason for Wood-ridge to link its fee to arrests rather than to convictions is to take money from the innocent in addition to the guilty.”).

. See Appellant’s Br. at 28-29, ECF No. 62 (“It is indisputable that the government cannot impose fees on persons arrested for no reason, for invidious reasons, or simply to harass the arrestee.... Some separate showing is therefore constitutionally necessary to justify charging an arrestee for the hassle of being arrested. Whatever that constitutionally required showing might be — probable cause, preponderance of the evidence, guilt beyond a reasonable doubt — there is no question that Woodridge will be unable to make that showing for many people whom its police arrest, such that charging those arrestees a $30 fee is constitutionally unjustified.”).

. See id. at 26 ("Woodridge could either incorporate an assessment of the fee’s legitimacy into the probable cause hearing or could simply add the fee to the panoply of costs imposed on those who are criminally convicted or plead guilty.”).